(No. 68486.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. TUHRAN A. LEAR, Appellant.

*Opinion filed March 21, 1991.—Rehearing denied June 3, 1991.*

140

CALVO, J., took no part.

Charles M. Schiedel and Daniel D. Yuhas, Deputy Defenders, and Patricia G. Mysza and Jon McPhee, Assistant Defenders, of the Office of the State Appellate Defender, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Terence M. Madsen and Steven J. Zick, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

Following a jury trial in the circuit court of Montgomery County, the defendant, Tuhran A. Lear, was found guilty of first degree murder, attempted first de-

gree murder, and two counts of armed robbery. He was sentenced to death. Additionally, he was sentenced to extended terms of 60 years for armed robbery and attempted murder. His execution was stayed pending direct review by this court (Ill. Const. 1970, art. VI, §4(b); 107 Ill. 2d Rules 603, 609(a)). We affirm.

## FACTS

At approximately 6 a.m. on Saturday, September 3, 1988, Gregory McAnarney, the manager of a gas station mini-mart, arrived at the station to work the morning shift. The station is located in Farmersville, Illinois, off Interstate Highway 55. Already there and working was Robert Bishop. McAnarney entered the store, retrieved money from the safe and went into his office to make out a bank deposit. Bishop, who worked the night shift, attended to the cash register and counter while McAnarney was in his office.

Randy Thomas, a tall thin black male, entered the store briefly, then exited behind Sharon Lynn, a departing customer, and re-entered the store along with Tuhran A. Lear, a stockier black male. Lear asked Bishop, the sales clerk, where the rest room was located and quickly proceeded past him in the direction Bishop pointed. Thomas stopped and stood in front of Bishop, approximately 10 to 12 feet away, and asked him the distance to Chicago. As Bishop started to answer Thomas' question, he was shot from behind in the back of the neck and fell to the floor wounded and bleeding but conscious. To avoid being shot again, he feigned death. Bishop then heard the office door open and another shot being fired. A few seconds later, Bishop felt someone remove his wallet from his pants' pocket and heard the cash register being tampered with.

At about 6:30 a.m., another customer, Susan Birrell, stopped at the station where the defendant, Lear,

opened the door for her. As she was about to enter the store, she looked inside and saw McAnarney lying face down on the floor in a pool of blood. She also saw Thomas standing behind the cash register. Realizing that "something was wrong," she began backing up as Lear said to her, "Get in here!" and motioned for her to enter the store. Lear then started walking toward her and lifted his shirttail to reveal a gun in his waistband. She turned around and fled to her car while Lear yelled, "Get out of here!" Waiting in Birrell's car was a passenger, Rick Stinbaugh. Birrell got into the car, told Stinbaugh what she had seen, and the two quickly drove away from the gas station. Stinbaugh contacted the State police via a CB radio in Birrell's car and gave the police a description of Thomas, Lear and their car, a tan Dodge Colt.

Shortly thereafter, the State police stopped the defendant's vehicle and conducted a search of the vehicle and a pat-down search of the defendant. The police found: (1) McAnarney's wallet in the defendant's pants' pocket; (2) dried blood on the defendant's right shoe; (3) three .38-caliber shells from the interior of the car; and (4) a .38-caliber revolver secreted inside a side panel on the passenger side of the vehicle which according to ballistics expert Michael Kreiser was the weapon used in the Farmersville armed robbery. The State police also discovered the contents of Bishop's wallet strewn along an area adjacent to the northbound lanes of Interstate 55. Bishop survived the shooting but McAnarney died. In sum, a review of the record indicates that the evidence against the defendant was overwhelming and conclusive. The defendant did not testify in his own defense.

The defendant raises numerous issues on appeal, none of which has merit. They are as follow.

## ADMISSION OF PRIOR INCONSISTENT STATEMENT

The defendant argues that the trial court erred in refusing to permit defense counsel to call Jacqueline Price, a newspaper reporter, as a witness to an allegedly prior inconsistent statement given by Bishop, the surviving victim. This issue was not preserved in a post-trial motion. Accordingly, it is waived. (*People v. Enoch.* (1988), 122 Ill. 2d 176, 186.) Notwithstanding waiver, however, we have examined the claim and found it meritless.

During the course of a newspaper telephone interview, Bishop allegedly told the reporter, Price, that the first black male who came into the gas station mini-mart was the "taller one." The defendant argues that this statement contradicts Bishop's trial testimony and indicates that Thomas, the taller of the two assailants, was the first black male to enter the store. Thus, it is claimed that the prior inconsistent statement supports Lear's defense that it was Thomas who killed McAnarney and shot Bishop, since the evidence shows that the first black male who entered the store committed the shootings. After reviewing the transcript of Bishop's testimony, the trial court found that Bishop never compared the relative sizes of Thomas and the defendant on direct examination but instead testified that the defendant was larger than *himself.* Consequently, the trial court found that there was no inconsistency between Bishop's two statements that would justify Price's impeachment testimony. We have also reviewed the transcript and agree with the trial court.

## OTHER-CRIMES EVIDENCE

The defendant argues that he did not knowingly and intelligently waive his right to testify because defense

counsel never obtained a ruling on the admissibility of evidence of defendant's involvement in another gas station robbery-murder committed just nine days before the incident in question in Collinsville, Illinois. The State's evidence allegedly included the defendant's palm print on the Collinsville gas station counter and the bullet removed from the victim's body was determined to have been fired from the same gun used in the Farmersville shooting. Defense counsel filed a motion *in limine*, seeking to prevent the introduction of any evidence linking the defendant to the Collinsville crime. During a recess in the jury selection proceedings, the State informed defense counsel that it would seek to introduce evidence in rebuttal linking the defendant to the Collinsville shooting if defendant testified that he had no knowledge that a robbery was going to occur in Farmersville. Near the close of the State's case in chief, the court admonished defendant that if he testified and denied knowledge that the Farmersville robbery was planned, the State would attempt to "introduce evidence of the Collinsville matter in rebuttal to prove his knowledge of the events that took place at the Farmersville station." The trial judge expressly reserved ruling on the admissibility of the Collinsville evidence, informing the defendant that he could not reach a decision because he did not know what the defendant's testimony might include. The defendant did not testify at trial, and when the issue was raised in defendant's motion for a new trial, the trial judge noted that had the defendant testified and denied knowledge, the admission of the evidence in rebuttal would have been entirely proper. The trial judge went on to state that the purpose behind the admonishment was not to dissuade the defendant from testifying, but rather to permit the defendant to make an informed decision. We agree.

It is well established that although evidence of other crimes is inadmissible if relevant merely to show a defendant's propensity to commit the crime charged, it is admissible, when relevant, to prove knowledge, intent, motive and *modus operandi.* (*People v. McKibbins* (1983), 96 Ill. 2d 176, 182.) The trial judge properly exercised his discretion in reserving a ruling on the motion *in limine.* There is no merit to the defendant's argument that he did not make a knowing and intelligent waiver of his right to testify because defense counsel did not obtain a definitive ruling on the motion *in limine.* The defendant was made fully aware of the probable consequences if his testimony denied knowledge of the Farmersville armed robbery plans. The only impediment to a final ruling on the admissibility of the Collinsville incident was the trial court's inability to predict the content of defendant's testimony. Therefore, the defendant's decision not to testify was an informed choice.

## APPOINTMENT OF MITIGATION EXPERT

Defendant asserts that he was deprived of his fourteenth amendment rights to due process and equal protection, his sixth amendment right to effective assistance of counsel, and his eighth and fourteenth amendment right to receive a reliable death sentence determination, where the trial court denied both his pretrial motion for the appointment of a mitigation investigator and his motion for a continuance to prepare for the second stage of the sentencing hearing.

Prior to trial, defense counsel moved to require the county to pay for a mitigation expert, suggesting that such an expert would provide assistance in investigating prior criminal activity of the defendant as well as any pertinent psychological background information and employment and educational history. The trial court denied the request for a mitigation expert, noting that 3½

months had elapsed since the commission of the offense and that the appointed co-counsel could assist in whatever investigation was required. The trial court also stated that if defense counsel was unable to obtain certain information, the court would consider appointing an investigator, if defense counsel made a specific request for such information. Defense counsel never informed the court of any unavailable mitigation evidence prior to the sentencing hearing. At the sentencing hearing, mitigation testimony was heard from defendant's girlfriend, mother and sister and included testimony that the defendant had a good relationship with his daughter and that the defendant was an average student.

Under the facts and circumstances of the instant case, we cannot find that the trial court erred in denying the request for a mitigation expert. The information desired in the instant case was of a nature that required no special knowledge or expertise on the part of the person doing the investigation. Thus, defendant's co-counsel were competent to perform the mitigation investigation themselves and required no outside assistance. Moreover, the trial court indicated that it would appoint an investigator if the defense counsel showed that specific information was needed and could not otherwise be obtained. Consequently, we find that the defendant's constitutional rights were not infringed, despite the denial of an investigator, since the defendant was given a sufficient opportunity to present mitigation evidence.

The defendant also argues that the denial of his request for a continuance before the second stage of the death penalty hearing violated his constitutional rights. The purpose for the continuance was to "secure some witnesses from the correctional center who spoke well of Mr. Lear." The trial court denied the motion to continue, but allowed into evidence the records from the defendant's incarceration and two recommendation letters from

counselors at the correctional facility. Under these facts, we hold that there was no abuse of discretion in denying the request for a continuance. *People v. Sanchez* (1986), 115 Ill. 2d 238, 262.

## ELIGIBILITY FOR DEATH SENTENCE

The jury found that the defendant was eligible for the death penalty based on two statutory aggravating factors: (1) murder in the course of an armed robbery; (2) the defendant had a previous murder conviction when he was a minor. (See Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(b)(3), (b)(6).) The defendant argues that he was not proved guilty beyond a reasonable doubt of actually killing the victim and that the double-murder aggravating factor was inapplicable because his previous murder conviction was committed when he was still a juvenile. Neither argument has merit.

The evidence adduced at trial revealed that: (1) according to Robert Bishop's testimony, the defendant was the only assailant who could have fired the shots from behind the counter area; (2) Susan Birrell observed the defendant carrying the gun in his waistband; (3) Gregory McAnarney's wallet was recovered from defendant's rear pants' pocket; and (4) blood was observed on defendant's right shoe. These facts support the jury's conclusion that the defendant was guilty of killing McAnarney beyond a reasonable doubt and was eligible for a sentence of death based on that factor alone. Moreover, with regard to the defendant's prior murder conviction, section 9—1(b)(3) does not forbid the use of a murder conviction obtained during a defendant's minority. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(3).) In fact, the clear language of the statute authorizes the use of murders committed as the result of "unrelated" and "separate" acts. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(3).) Therefore, both statutory factors used to estab-

lish defendant's eligibility for the death penalty were properly presented to and considered by the jury.

## PEREMPTORY CHALLENGES

The defendant claims that his right to an impartial jury was violated where the prosecution used peremptory challenges to exclude potential jurors who had expressed reservations about imposing the death penalty. The defendant did not object to the peremptory challenges during *voir dire*, nor was the claim presented in a post-trial motion. The issue has thus been waived. (*People v. Stewart* (1984), 104 Ill. 2d 463, 481.) Moreover, contrary to the defendant's assertion, the failure to preserve the issue does not constitute ineffective assistance of counsel. *Stewart*, 104 Ill. 2d at 481-82.

## VICTIM IMPACT EVIDENCE

The defendant complains that testimony elicited from Robert Bishop, the surviving victim, concerning his family, his former employment, and the ages of both victims was irrelevant and prejudiced the defendant in the eyes of the jury. We find that this testimony was merely foundational in nature, that it occurred in a fleeting fashion, and that this evidence did not prejudice the defendant.

## JURY INSTRUCTIONS AT TRIAL

The defendant contends that the failure to include a specific mental state in the jury instructions on armed robbery violated the defendant's due process rights. The defendant also claims that the first degree murder instruction was deficient in that it failed to inform the jury of the specific requisite mental state required to support a conviction for felony murder. We find that both instruction issues were waived for the defendant's failure to object and to include them in a post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186.) Further, the

criterion for examining these instructions under the plain error rule does not apply since the evidence in this case is not closely balanced. *People v. Mack* (1984), 105 Ill. 2d 103, 125.

## JURY INSTRUCTIONS AT SENTENCING HEARINGS

The defendant argues that the trial court erred in refusing to instruct the jury at the first stage of the sentencing hearing that the only alternative to death was natural life imprisonment. We find no merit to the defendant's claim. This court has held that at the first stage of the sentencing hearing a trial judge need not inform the jury of the particulars of the sentencing alternative that would be imposed should the defendant be found ineligible for death. (*People v. Albanese* (1984), 102 Ill. 2d 54, 81.) This is because, at the first phase of the sentencing hearing, the jury is concerned solely with the threshold question of whether the defendant is even eligible for death. Only at the second phase of the hearing do actual sentencing determinations arise. It is noted that the natural life instruction proffered at the second stage of the sentencing hearing in the instant case is in accord with the language set forth by this court in *People v. Gacho* (1988), 122 Ill. 2d 221, 262.

The defendant additionally argues that the instructions given in this case did not inform the jury that it could consider mercy and compassion at the second stage of the death penalty hearing. This argument is spurious since the instructions given allowed the jury to consider all reasons why the defendant should not be sentenced to death, including feelings of mercy.

## INEFFECTIVE ASSISTANCE OF COUNSEL AT THE SECOND STAGE OF THE DEATH PENALTY HEARING

Defendant complains that he received ineffective as-

sistance at the second stage of the death penalty hearing in that defense counsel allegedly conceded his guilt in the unrelated Collinsville shooting, conceded his guilt in the instant case, and confined his argument to the jury to a plea that there is no justification to take a human life. Defendant's claims are meritless. First, subsequent to the sentencing hearing, the defendant pleaded guilty to the Collinsville murder and received a sentence of natural life imprisonment without possibility of parole. Thus, any error caused by his attorney's comments was harmless. Second, this court has rejected a claim of ineffective assistance where counsel admitted defendant's guilt in closing, but also attempted to underscore the mitigating evidence. (*People v. Franklin* (1990), 135 Ill. 2d 78, 117-19.) Similarly, defense counsel in the instant case chose to abandon the defendant's claim of innocence and instead determined to focus on the evidence in mitigation presented on the defendant's behalf. This was a matter of trial strategy and the fact that the jury did not accept that position does not mean that defense counsel was ineffective. (*People v. Harris* (1988), 123 Ill. 2d 113, 157-58.) Likewise, defense counsel's argument that there is no justification for taking human life was counsel's appeal to the jury's sense of morality and was his tactic to underscore the burden attached to imposing the death penalty.

## UNADJUDICATED CRIMINAL CONDUCT EVIDENCE

Defendant asserts that the trial court erred in allowing the jury to consider evidence of unadjudicated criminal conduct during the second stage of the sentencing hearing. We disagree. This court has previously held that evidence showing the defendant's commission of other crimes or acts of misconduct is admissible even though

the defendant was not prosecuted or convicted for such conduct. *People v. Ramirez* (1983), 98 Ill. 2d 439, 460-61.

## OPENING AND REBUTTAL STATEMENTS

Defendant contends that the trial court denied him a fair sentencing hearing under the eighth and fourteenth amendments by allowing the State to present both opening and rebuttal arguments at the second stage of the sentencing hearing. This court has rejected a similar argument in *People v. Williams* (1983), 97 Ill. 2d 252, 302-03. We choose not to reconsider our decision in *Williams*.

## CONSTITUTIONALITY OF ILLINOIS DEATH PENALTY ACT

Defendant asserts that the death penalty statute violates the State and Federal Constitutions in that it: (1) fails to require the State to prove beyond a reasonable doubt that there are no mitigating factors sufficient to preclude imposition of the death sentence; (2) places the burden on defendant to prove that death should not be imposed after he is found eligible; and (3) does not sufficiently minimize the risk of arbitrary and capricious sentences. The defendant's arguments have been repeatedly rejected by this court and we decline to consider them anew. See *People v. Kubat* (1983), 94 Ill. 2d 437, 503-04; *People v. Whitehead* (1987), 116 Ill. 2d 425, 462-65; *People v. Albanese* (1984), 102 Ill. 2d 54.

## INEFFECTIVE ASSISTANCE OF COUNSEL THROUGHOUT THE PROCEEDINGS

Finally, defendant raises the issue of his trial counsel's ineffective performance throughout the instant proceedings. We find no deficiency in defense counsel's performance.

## CONCLUSION

For the reasons set forth above, we affirm the defendant's convictions and sentence of death. We hereby direct the clerk of this court to enter an order setting Tuesday, September 27, 1991, as the date on which the sentence of death entered by the circuit court of Montgomery County shall be carried out. The defendant shall be executed by lethal injection in the manner provided by section 119—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 119—5). The clerk of this court shall send a copy of the mandate to the Director of Corrections, the warden of Stateville Correctional Center, and the warden of the institution where the defendant is confined.

*Affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.