(No. 78292.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. TUHRAN A. LEAR, Appellant.

*Opinion filed February 6, 1997.—Rehearing denied*
*March 31, 1997.*

266

McMORROW, J., concurring in part and dissenting in part.
FREEMAN, J., dissenting.

Charles M. Schiedel, Deputy Defender, of Spring-field, and Kim Robert Fawcett, Assistant Defender, and

Marshall J. Hartman, Deputy Director, of Chicago, all of the Office of the State Appellate Defender, for appellant.

James E. Ryan, Attorney General, of Springfield, and Kathryn Dobrinic, State's Attorney, of Hillsboro (Barbara A. Preiner, Solicitor General, and Arleen C. Anderson and Steven J. Zick, Assistant Attorneys General, of Chicago, of counsel), for the People.

CHIEF JUSTICE HEIPLE delivered the opinion of the court:

Following a jury trial in the circuit court of Montgomery County, defendant, Tuhran Lear, was convicted of first degree murder, attempted first degree murder, and two counts of armed robbery. The jury found defendant eligible for the death penalty and found no mitigating circumstances sufficient to preclude imposition of the death penalty. Defendant was sentenced to death and also to two concurrent 60-year prison terms for armed robbery and attempted murder.

On direct appeal, this court affirmed the convictions and sentences. *People v. Lear*, 143 Ill. 2d 138 (1991). Defendant subsequently filed a petition for post-conviction relief which he later amended and supplemented. Of the 11 claims raised in defendant's post-conviction petition, nine were dismissed by the court without an evidentiary hearing. After an evidentiary hearing on the remaining two claims, the court denied defendant's post-conviction petition.

Before this court, defendant argues that (1) defense counsel was ineffective in failing to request a *voir dire* question regarding racial bias; (2) defense counsel was ineffective in failing to properly present the defense theory that defendant was not the shooter; (3) defense counsel was ineffective at the capital sentencing hearing; and (4) defendant was denied his constitutional

rights when evidence of other crimes was admitted as aggravating evidence during the sentencing hearing. We affirm.

The evidence at trial disclosed that, on September 3, 1988, defendant, accompanied by Randy Thomas, entered a gas station in Farmersville, Illinois, and emptied the cash register. During the robbery, defendant shot the store manager, Gregory McAnarney, and an employee, Robert Bishop. McAnarney died as a result of the gunshot wound but Bishop survived and later testified against defendant.

Further details regarding the evidence presented at defendant's trial are set forth in the opinion disposing of defendant's direct appeal (*Lear*, 143 Ill. 2d 138) and will be referred to below only as necessary to dispose of defendant's instant appeal.

## ANALYSIS

A proceeding under the Post-Conviction Hearing Act is a collateral attack on the judgment of conviction which is limited to constitutional issues which were not, and could not have been, presented on direct review. *People v. Gosier*, 165 Ill. 2d 16, 20 (1995). Issues decided by a reviewing court on a prior direct appeal are *res judicata* as to issues actually decided; issues that could have been presented during direct review, but were not, are deemed waived for purposes of post-conviction review. *People v. Franklin*, 167 Ill. 2d 1, 9 (1995). On review, the trial court's determinations regarding the post-conviction petition will not be disturbed unless they are manifestly erroneous. *Franklin*, 167 Ill. 2d at 9.

### I. Ineffective Assistance of Counsel

In order for defendant to succeed on a claim of ineffective assistance of counsel, he must show (1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) that

counsel's deficient performance so prejudiced defendant that there is a reasonable probability that the outcome of the trial would have been different without counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); *People v. Simms*, 168 Ill. 2d 176 (1995). This standard applies to claims of ineffective assistance of both trial and appellate counsel. *People v. Foster*, 168 Ill. 2d 465 (1995). A reviewing court may reject a claim of ineffective assistance of counsel by finding that defendant was not prejudiced by counsel's representation without determining whether counsel's performance was deficient. *People v. Erickson*, 161 Ill. 2d 82, 90 (1994).

## A. *Voir Dire*

Defendant, an African-American, argues that his trial counsel was ineffective in failing to inform the jury that the victim was white and in failing to draft and tender a *voir dire* question regarding racial bias. Initially, the State argues that this issue is waived because it was plainly discernible from the record and thus could have been raised on direct appeal. We find that this argument is not waived since it is based on evidence first presented during the post-conviction hearing, during which defendant testified that prior to *voir dire* he had asked defense counsel to question prospective jurors about racial bias.

"[T]he Constitution requires a trial judge to question venirepersons specifically regarding racial prejudice if 'special circumstances' exist that suggest a constitutionally significant likelihood that racial prejudice might infect a defendant's trial." *People v. Peeples*, 155 Ill. 2d 422, 459 (1993). Such special circumstances exist where racial issues are " 'inextricably bound up with the conduct of the trial.' " *Peeples*, 155 Ill. 2d at 459-60, quoting *Ristaino v. Ross*, 424 U.S. 589, 596-97, 47 L. Ed. 2d 258, 264, 96 S. Ct. 1017, 1021 (1976). In general, that

the defendant and victim are of different races does not in itself create a special circumstance. *Peeples*, 155 Ill. 2d at 460. However, when a capital defendant is on trial for an interracial crime, the defendant is entitled to have prospective jurors informed of the race of the victim and questioned about racial bias, but only as to the sentencing phase, and only if the defendant specifically requests such an inquiry. *Turner v. Murray*, 476 U.S. 28, 37, 90 L. Ed. 2d 27, 37, 106 S. Ct. 1683, 1688 (1986).

After reviewing the record, we find that the circuit court's decision to dismiss this claim in the post-conviction petition was not manifestly erroneous. During the post-conviction hearing, defendant testified that he asked defense counsel to question prospective jurors about racial bias. However, defense counsel testified that defendant made no such request. The issue was thus one of credibility since counsel and defendant gave different views of what transpired prior to and during *voir dire*. The trial court did not find defendant credible on this point and thus dismissed the claim.

Since defendant, according to the trial court, did not ask for an inquiry into racial bias, counsel was not required to make such an inquiry. *Turner*, 476 U.S. at 37, 90 L. Ed. 2d at 37, 106 S. Ct. at 1688. Whether to ask such questions was then left to counsel as a matter of trial strategy, which is protected under *Strickland*. *Strickland*, 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066; *People v. Steidl*, 142 Ill. 2d 204, 240 (1991) (trial counsel's strategic decisions are generally protected by a strong presumption that they reflect sound strategy rather than incompetence). Accordingly, we affirm the dismissal of this claim.

## B. *Trial*

### 1. Shooter Defense

The defense theory at trial was that Thomas, rather

than defendant, did the shooting during the robbery. Defendant argues that counsel was ineffective for failing to admit a prior statement made by the victim, Bishop, which defendant contends supported his theory of the case. The trial court dismissed this claim, finding that defendant failed to satisfy the prejudice prong of *Strickland.* See *Erickson,* 161 Ill. 2d at 90.

We first note that this issue is not barred by the doctrine of *res judicata,* as the State contends. On direct appeal, this court addressed whether the trial court erred in refusing to allow impeachment of Bishop using the reporter's testimony. *Lear,* 143 Ill. 2d at 145. However, the court never addressed whether counsel was ineffective in failing to have Bishop's prior statement admitted. The State further argues that the issue is waived, as it could have been raised on direct appeal, to which defendant responds that the issue is preserved due to the ineffectiveness of appellate counsel in failing to raise the issue. We thus consider the alleged ineffectiveness of appellate counsel.

Bishop, who was shot in the neck during the robbery, testified at trial that defendant came into the store and asked for the rest room. Bishop pointed to the rest room and defendant walked toward it, leaving Bishop's line of sight. Defendant's accomplice, Thomas, who was taller than defendant, then asked Bishop how far it was to Chicago. A few moments later, Bishop heard a noise behind him, upon which he was shot in the neck.

Prior to trial, Bishop allegedly told a newspaper reporter that the first man who entered the store was the taller of the two, which, if correct, would suggest that the taller man, Thomas, fired the shots. At trial, defense counsel cross-examined Bishop about his statement to the reporter and Bishop replied that he did not recall what he said to the reporter. However, counsel failed to ask Bishop whether the taller man entered the

store first. When counsel later attempted to impeach Bishop with the reporter's testimony, the trial court ruled that there was nothing to impeach since Bishop never testified about the relative heights of the two assailants.

Defendant now argues that counsel was ineffective when he failed to have Bishop's prior statement admitted, and specifically contends that counsel erred when he: (1) failed to obtain an affidavit from Bishop, which could have been used substantively or to refresh Bishop's recollection; (2) failed to cross-examine Bishop about who came into the store first; (3) failed to properly preserve this issue by making an offer of proof of the reporter's testimony; and (4) failed to request a jury instruction allowing substantive use of Bishop's prior statement.

However, had Bishop's statement to the reporter been admitted as substantive evidence, it would not have impacted the outcome of the trial. During direct examination, Bishop, using a photograph, unequivocally identified Thomas as the man who stayed in front of him and asked the distance to Chicago. Another witness testified that she saw defendant with the gun in his waistband as he left the gas station after the robbery. Also, when defendant was picked up by police he had the murdered victim's wallet in his pocket and dried blood on his shoe. Moreover, on redirect, Bishop explained that he was distracted while making the statement to the reporter because his wife was at work and he was fixing supper while supervising his four young children.

In light of this evidence, defendant was not prejudiced when counsel failed to introduce into evidence Bishop's prior statement. Since we find no prejudice, we affirm the trial court's dismissal of this claim of ineffective assistance of counsel. *Erickson*, 161 Ill. 2d at 90.

## C. *Sentencing*

Defendant raises various ineffective-assistance-of-counsel claims arising out of the sentencing hearing. Therein, the State presented aggravating evidence of two prior murders committed by defendant. First, the State presented evidence of a 1974 juvenile murder conviction which occurred when defendant was 15 years old. Second, the State presented evidence that defendant committed a robbery/murder at a gas station in Collinsville, Illinois, nine days before the instant crime.

Defense counsel presented three witnesses in mitigation. Defendant's girlfriend testified that she had a good relationship with defendant and that he was "always there" for her when she needed help. She also stated that defendant had a good relationship with his young daughter. In addition, defendant's mother testified that defendant had been an obedient child and an average student. Finally, defendant's sister testified that he was a good child who got along well with his brothers and sisters. She also stated that defendant was a good parent who supported his daughter regularly.

### 1. Counsel's Inexperience and Limited Resources

Defendant argues that trial counsel's inexperience and lack of resources constituted a *per se* violation of his right to effective assistance of counsel. Defendant first argues that trial counsel was *per se* ineffective because no co-counsel was appointed. Defendant cites to the guidelines for capital cases provided by the American Bar Association and the National Legal Aid and Defender Association, which recommend that two attorneys be appointed to represent each capital defendant. Second, defendant argues that trial counsel was *per se* ineffective because he was young, inexperienced, and had insufficient resources. Testimony by defense counsel at the post-conviction hearing showed that: counsel graduated from law school two years prior to

his appointment as counsel for defendant; this was both counsel's first homicide and first capital case; counsel had never received any formal training for defending a capital case; counsel's office employed no other attorneys and no investigator; the only assistance received by counsel was 60 hours of legal research help from another attorney; and, during the time counsel was representing defendant, he was responsible for numerous other pending cases.

Having a counsel with limited resources and limited experience is not a circumstance which this court has held to constitute *per se* ineffective assistance of counsel. See, *e.g.*, *People v. Hattery*, 109 Ill. 2d 449, 461 (1985) (counsel failed to present a defense); *People v. Brandon*, 162 Ill. 2d 450 (1994) (counsel failed to request a fitness hearing for a defendant taking psychotropic medication). Therefore, the proper inquiry is whether counsel's representation fell below the standard of ineffective assistance of counsel set forth in *Strickland*.

Applying *Strickland* to the instant case, we reject defendant's ineffective-assistance claim because these alleged deficiencies did not result in prejudice to defendant. *Erickson*, 161 Ill. 2d at 90. Defendant was convicted by overwhelming evidence, after which substantial aggravating evidence was presented, including evidence of two prior murders committed by defendant. Defendant has failed to show how additional personnel or financial resources would have resulted in a sentence other than death. We thus affirm the trial court's dismissal of defendant's claim of ineffective assistance of counsel based on counsel's level of experience and amount of resources.

### 2. Continuance of Sentencing Hearing

During the sentencing hearing, counsel unsuccessfully requested a continuance in order to further prepare for the proceedings. Defendant now argues that

counsel was ineffective in failing to request a continuance *prior to* the sentencing hearing in order to further investigate the Collinsville crime and the juvenile conviction.

The State contends that these issues are waived since they could have been raised on direct appeal. With regard to the Collinsville crime, we agree since no new evidence was presented about that crime during the post-conviction proceedings. However, a claim based on failure to investigate the juvenile crime was not waived because it was based on evidence first presented during the post-conviction proceedings.

During the post-conviction proceedings, defendant presented evidence that, as a juvenile, he committed murder because he was "provoked over a period of time and probably was fed up with being picked on." Such evidence, however, is no justification for killing another human being and would have been insufficient to counteract the aggravating nature of the juvenile murder conviction. Thus, defendant was not prejudiced by counsel's failure to request a continuance to allow further investigation that may have led to the discovery of this evidence. Accordingly, the trial court properly dismissed this claim of ineffective assistance of counsel. *Erickson*, 161 Ill. 2d at 90.

### 3. Mitigation

Next defendant argues that trial counsel was ineffective in preparing and presenting mitigating evidence. He argues that counsel was ineffective in that he (1) failed to renew a previously denied request for funds to hire a mitigation expert; (2) used available funds to acquire legal research assistance rather than mitigation investigation assistance; (3) failed to adequately question defendant's friends and family members; and (4) failed to argue to the jury that defendant's past substance abuse impaired his judgment. The State responds

that none of these instances were a violation of defendant's right to effective assistance of counsel because defendant failed to show how these omissions prejudiced defendant. Specifically, the State contends that doing the above would not have uncovered mitigating evidence sufficient to change the outcome of this case.

During the post-conviction hearing, defendant presented additional mitigating evidence that was not presented during sentencing. Three former correctional officers testified as to defendant's good conduct while he was in juvenile detention. Angela Granberry, who lived with defendant for several years and who was the mother of defendant's daughter, testified that he was a good family man, provided well for their daughter and helped around the house while she was attending college. She also stated that he was good with kids, including his own daughter and Angela's son, and that he was a good worker. Angela's father, sister and aunt also testified to these facts. A mitigation specialist from the Capital Resource Center prepared defendant's social history, outlining his disadvantaged childhood and lack of childhood supervision. Dr. Risolo, a psychiatrist, testified as to defendant's substance abuse history and his mother's failure to teach values. Finally, a friend of defendant testified about defendant's drug and alcohol use during the years prior to the instant crime.

The additional evidence presented through the testimony of defendant's family at the post-conviction hearing was largely cumulative of evidence presented during the sentencing hearing. The remainder of the additional evidence was not sufficiently mitigating, in light of the aggravating evidence, to change the outcome of the sentencing hearing. We thus find that defendant was not prejudiced by failure to present his disadvantaged childhood and substance abuse history (see *People v. Christiansen*, 116 Ill. 2d 96, 129 (1987) (death penalty

appropriate despite mitigating evidence that included drug addiction and a deprived childhood); *People v. Johnson*, 146 Ill. 2d 109, 145 (1991) (death penalty appropriate despite mitigating evidence that included drug and alcohol abuse, as well as abuse as a child)), or his good behavior while incarcerated as a juvenile (see *People v. Garcia*, 165 Ill. 2d 409, 437 (1995) (defendant's good behavior in prison not sufficiently mitigating to preclude a death sentence)). Accordingly, we affirm the trial court's dismissal of this claim.

4. Psychological/Physiological Evidence

Defendant argues that counsel was ineffective for failing to seek mitigating evidence concerning his possible psychological and physiological defects. Specifically, defendant argues that counsel was ineffective because he (1) failed to obtain the court file of defendant's juvenile conviction, which contained a fitness report and a psychiatric report; (2) failed to obtain a psychological evaluation in response to the information contained in the juvenile court file; and (3) failed to obtain a neurological evaluation to determine if defendant had brain damage as a result of past substance abuse.

At the post-conviction hearing, a psychiatrist, Dr. Risolo, testified regarding her psychological evaluation of defendant prior to the post-conviction hearing. Dr. Risolo testified that defendant had antisocial personality disorder and mild neurotic depression. She further testified that defendant's substance abuse might have contributed to some neurological disfunction but stated that no disfunction had ever been conclusively proven.

We find that defendant was not prejudiced by counsel's failure to present this evidence during the sentencing hearing. Given the overwhelming aggravating evidence and the relatively weak mitigating evidence, evidence of defendant's antisocial personality dis-

order and depression would not have resulted in a sentence other than death. See *People v. Montgomery*, 112 Ill. 2d 517, 533 (1986) (death penalty appropriate despite defendant's antisocial personality disorder and extreme mental and emotional disturbances). Furthermore, Dr. Risolo's testimony about a possible, unproven neurological disfunction also would have been insufficient to change the outcome of the sentencing hearing. See *Montgomery*, 112 Ill. 2d at 533. Since defendant was not prejudiced by the failure to present this evidence, we affirm the dismissal of this claim of ineffective assistance. *Erickson*, 161 Ill. 2d at 90.

5. Codefendant's Lesser Sentence

Defendant, citing *Messer v. State*, 330 So. 2d 137 (Fla. 1976), argues that counsel was ineffective in failing to argue, as a nonstatutory mitigating circumstance, the lesser sentence given to Thomas, his codefendant. As the State observes, this precise argument was rejected by this court in *People v. Page*, 156 Ill. 2d 258, 270-72 (1993). Accordingly, we affirm the dismissal of this claim of the post-conviction petition.

6. Prosecutor's Closing Argument

Defendant argues that defense counsel was ineffective when he failed to object to the prosecutor's request that the jury "recommend" a death sentence. Defendant argues that the statement improperly misled the jury regarding its responsibility for imposing the death penalty. As the State correctly observes, this issue is waived because it was not raised on direct appeal and is not based on any new evidence presented during the post-conviction proceedings. However, insofar as defendant argues that the issue is preserved for review because it was not raised on direct appeal due to the ineffectiveness of appellate counsel, we will review the claim.

The State may not, in closing argument, mislead the jury to believe that the ultimate responsibility for a defendant's death penalty rests elsewhere. *Caldwell v. Mississippi*, 472 U.S. 320, 86 L. Ed. 2d 231, 105 S. Ct. 2633 (1985). When such an allegation is made, "[t]he relevant inquiry *** is whether in consideration of all facts and circumstances, the State has misled the jury regarding its sentencing role. No single factor is necessarily dispositive." *People v. Flores*, 153 Ill. 2d 264, 287 (1992). Therefore, in order to determine whether the argument was improper, we must look at the State's closing argument as a whole.

In two instances during her closing argument, the prosecutor asked the jury to "impose and recommend the death sentence." We find that those statements did not improperly mislead the jury because use of the word "impose" adequately counteracted any improper effect resulting from use of the word "recommend." As her final words to the jury, the prosecutor stated, "We ask you to recommend that the death sentence be imposed. Thank you." The jury was not misled by this statement either because, only a few moments earlier, the prosecutor had expressly acknowledged the weight of the jury's responsibility for the death penalty, recognizing "that for responsible people [imposing and recommending the death penalty] is not an easy thing." Furthermore, the jury instructions clearly apprised the jury of its responsibility for imposing the death penalty.

Under these circumstances, we find that the State did not improperly diminish the jury's sense of responsibility. Since the State's closing argument was not misleading, appellate counsel was not ineffective for failing to raise the issue on direct appeal and the issue is therefore waived. Accordingly, we affirm the trial court's dismissal of this claim of the post-conviction petition.

7. Defense's Closing Argument

Defendant argues that counsel was ineffective in his

closing argument during the second phase of the sentencing hearing because he merely focused upon the death penalty generally without arguing mitigating circumstances. On direct appeal, this court stated: "Defendant complains that he received ineffective assistance at the second stage of the death penalty hearing in that defense counsel *** confined his argument to the jury to a plea that there is no justification to take a human life. Defendant's claims are meritless." *Lear*, 143 Ill. 2d at 151-52. Since this issue was addressed on direct appeal it is now *res judicata* and may not be relitigated during this post-conviction appeal. We thus affirm the circuit court's dismissal of this claim.

## II. Aggravating Evidence

Defendant argues that evidence of a crime he committed in Collinsville, Illinois, was improperly used as aggravating evidence. First, defendant argues that he was denied due process, effective assistance of counsel, and his right to be free from cruel and unusual punishment when evidence of the Collinsville crime was admitted in the absence of requested counsel for the Collinsville crime. Second, defendant argues that he was denied effective assistance of counsel when defense counsel failed to object to the evidence's introduction on due process grounds.

The State responds that any challenge to the introduction of evidence of the Collinsville crime is *res judicata* because, during direct appeal, this court affirmed the use of this evidence when it stated:

"Defendant asserts that the trial court erred in allowing the jury to consider evidence of unadjudicated criminal conduct during the second stage of the sentencing hearing. We disagree. This court has previously held that evidence showing the defendant's commission of other crimes or acts of misconduct is admissible even though the defendant was not prosecuted or convicted for such conduct. *People v. Ramirez* (1983), 98 Ill. 2d 439, 460-61." *Lear*, 143 Ill. 2d at 152-53.

We agree that this issue cannot be raised again here and thus affirm the trial court's decision to dismiss this claim.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the circuit court. We direct the clerk of this court to enter an order setting Wednesday, May 21, 1997, as the date on which defendant's sentence of death is to be carried out. The defendant shall be executed in a manner provided by law. 725 ILCS 5/119—5 (West 1994). The clerk of this court shall send a certified copy of the mandate in this case to the Director of Corrections, the warden at Stateville Correctional Center, and the warden of the institution where the defendant is now confined.

*Affirmed.*

JUSTICE McMORROW, concurring in part and dissenting in part:

I concur in the majority opinion to the extent that it affirms defendant's convictions for murder, attempted murder, and armed robbery. However, I join in the dissent of Justice Freeman only with respect to his analysis and conclusions on the issue of trial strategy during *voir dire.*

JUSTICE FREEMAN, dissenting:

In this appeal from the denial of post-conviction relief, defendant, as petitioner, argues that he was denied effective assistance of counsel for several reasons. I take issue with the majority's analysis and resolution of at least two of defendant's claims. Because there is an unreasonable risk that this defendant was unfairly sentenced to death, I dissent.

### *Voir Dire*

Defendant claims ineffectiveness in that his trial

counsel, during *voir dire*, failed to raise the issue of racial bias to the venire in accordance with *Turner v. Murray*, 476 U.S. 28, 90 L. Ed. 2d 27, 106 S. Ct. 1683 (1986), and *People v. Peeples*, 155 Ill. 2d 422 (1993). The majority correctly notes that when a capital defendant is on trial for an interracial crime the defendant is entitled to have prospective jurors informed of the race of the victim and questioned about racial bias. 175 Ill. 2d at 269-70. The majority errs, however, in its statement of how the right is invoked and, correspondingly, in its analysis of counsel's failure to assert the right in this case.

In his petition, defendant asserted that he had requested that counsel make a *Turner* inquiry; however, counsel refused. The majority, finding that defendant's post-conviction testimony to that effect was contradicted by counsel's testimony, holds that "[t]he issue was thus one of credibility," and the trial court did not find defendant credible on this point. 175 Ill. 2d at 270. The majority then holds that because the court found that defendant himself made no such request of counsel, counsel was not required to make the inquiry. 175 Ill. 2d at 270.

The majority misstates the law concerning how the right to a *Turner* inquiry is invoked. *Turner* does not contemplate that a defendant, who is represented by counsel, will, in the first place, be aware of such an entitlement, or that the defendant will, in the second place, specifically request that his attorney make such an inquiry. That a defendant himself fails to request the *Turner voir dire* does not deprive him or her of his entitlement to such an inquiry. Many of the rights of an accused, including constitutional rights, are such that only trained experts can comprehend their full significance.

By its analysis, the majority effectively grafts onto

the *Turner* entitlement a new requirement—that the defendant as client must request the inquiry. However, *Turner* merely holds that "a capital defendant accused of an interracial crime is entitled to have prospective jurors informed of the race of the victim and questioned on the issue of racial bias. *** Also, a defendant cannot complain of a judge's failure to question the venire on racial prejudice unless the defendant has specifically requested such an inquiry."

Significantly, the Court in *Morgan v. Illinois*, 504 U.S. 719, 119 L. Ed. 2d 492, 112 S. Ct. 2222 (1992), in setting out the requirement for a reverse-*Witherspoon* inquiry, relies largely on the reasoning in *Turner* and uses much the same language. *Morgan*, 504 U.S. at 736, 119 L. Ed. 2d at 507, 112 S. Ct. at 2233 ("*[p]etitioner was entitled, upon his request, to inquiry* discerning those jurors who," prior to termination of the case, had predetermined the issue of death (emphasis added)). I have not heard it suggested that, because the defendant himself does not request the reverse-*Witherspoon* inquiry, counsel is not required to inquire. Entitlement to a *Turner* inquiry, like the entitlement to the reverse-*Witherspoon* inquiry, is far too important to depend on the request of an untrained criminal defendant.

Knowledge of a constitutional entitlement to inquiry on matters such as a predisposition to impose death or, in this case, on racial bias, is within the knowledge of the criminal defense attorney, not the client. Thus, the viability of defendant's *Turner* claim does not turn on whether the post-conviction court disbelieved that defendant, as client, requested that counsel make such an inquiry.

The majority next reasons that since defendant did not request the *Turner* inquiry, whether to conduct such an inquiry became a matter of trial strategy, not subject to the *Strickland* ineffectiveness analysis (see *Strick-*

*land v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)). 175 Ill. 2d at 270.

Certainly, what questions will be posed on *voir dire may* properly fall within the bounds of trial strategy. However, counsel's failure to inquire on *Turner* racial bias was not converted to a strategic decision merely because defendant failed to request such an inquiry. Strategic decisions are those decisions which flow from counsel's particular knowledge and expertise. Thus, while a decision on whether to *voir dire* on particular issues may be a matter of trial strategy, the absence of *voir dire* on such issues might just as well be a matter of ineptitude, inexperience, lack of preparation or unfamiliarity with basic legal principles. In such case, the failure to *voir dire* amounts to ineffective assistance of counsel. 1 ABA Standards for Criminal Justice § 4—5.2 (2d ed. Supp. 1986).

Here, it is significant that counsel had been admitted to the bar for only a two-year period prior to being assigned this, his very first, capital case. While the extent and nature of counsel's legal experience alone do not necessarily support a conclusion of ineffective assistance, those facts take on particular significance in the evaluation of a *Turner* claim. This is so because *voir dire* pursuant to *Turner* is available to capital defendants only. Unless there is evidence here to support a finding that counsel's failure to request a *Turner* inquiry flowed from his particular knowledge and expertise concerning the nature and purpose of the *Turner* inquiry, there can be no basis upon which to conclude that such a failing was the result of trial strategy.

Proper resolution of the issue requires more than cursory consideration; it necessarily involves thorough review and consideration of counsel's post-conviction affidavit and testimony in the context of his conduct of *voir dire.* Based upon my review, I believe that the rec-

ord supports the conclusion that counsel was unfamiliar with the *Turner* entitlement and his failure to *voir dire* was, therefore, not a matter of strategy.

In his affidavit, counsel first states that, during *voir dire*, he asked each potential juror whether there was anything about defendant that would cause him or her to be biased or prejudiced. His purpose in asking that question was to address the issue of racial prejudice because defendant was black. Counsel next states that he "had no reason for not asking a question of the venire on *voir dire* whether the race of the victim would be a factor in causing them to be biased or prejudiced against Mr. Lear." Finally, counsel states that he *might* have discussed with defendant asking a question concerning racial bias because of the victims' race, and he *may* have said that such a question would get the jurors "pissed off" and that they would be there three weeks and he *may* have preferred not to harp on the victims' race because he *might* have thought that that was more harmful, although he did not recall.

The only definitive statements concerning *voir dire* in counsel's affidavit are that: (1) he was concerned about racial bias and (2) he had no reason for failing to request the *Turner* inquiry. The remainder of counsel's statements concerning what he *might have thought* regarding a *Turner* inquiry can only be characterized as tentative and equivocal at best.

Counsel's subsequent direct examination testimony at the post-conviction hearing is consistent with the statements in his affidavit. After being shown his affidavit, counsel testified concerning the *Turner* inquiry in much the same equivocal manner as his statements in his affidavit. Particularly telling are the prosecutor's cross-examination questions and counsel's answers thereto.

"Ms. Dobrinic [Assistant State's Attorney]: Now, did you ever in the course of your relationship have—well,

did [defendant] ever express a concern that he might be an African-American defendant being tried in a predominantly Caucasian county?

Mr. Grigsby [Defense Attorney]: I am sure that there would have been some discussions regarding that. Usually that subject came up whenever I represented African-Americans in this county.

***

Ms. Dobrinic: Mr. Grigsby, as a trial attorney and under the circumstances that we were in being in Effingham, Illinois, with the defendant, did you think it was proper to find out jurors attitudes toward race—or let me say this. Did you think it was important to find out their attitudes towards race?

Mr. Grigsby: Well, yes, I thought that was important.

Ms. Dobrinic: Do you feel like you did that by your *voir dire* of these jurors?

Mr. Grigsby: Yes, I felt that the race issue was brought out during the *voir dire* by the questions.

Ms. Dobrinic: Did you find it necessary to specifically ask jurors are you prejudiced against African-Americans?

Mr. Grigsby: No, no, because the jurors understood the question and would volunteer any prejudice they had."

Four things are apparent from counsel's affidavits and testimony and none of them suggest strategy with respect to *Turner*: (1) counsel was concerned about racial prejudice in predominantly white Effingham County; (2) counsel had no reason for failing to request a *Turner* inquiry; (3) counsel "might have" chosen not to inquire regarding *Turner* racial bias because it "might have" been more harmful and (4) counsel believed his inquiry concerning prejudice toward the defendant was sufficient to prompt a volunteer admission concerning any type of racial bias.

Based on counsel's statements and testimony, I would not find that his failure to request a *Turner* inquiry was in fact trial strategy. Counsel stated that he was concerned about prejudice in predominantly white Effingham County. So concerned about racial bias was

counsel that he specifically questioned and excused those particular jurors who would judge partially based on defendant's race. Though actively inquiring and ferreting out any biased juror prior to the commencement of trial, counsel now offers that he might have chosen not to additionally inquire concerning interracial crime bias because such an inquiry might have harmfully focused the jury's attention on that fact.

Even if I could disregard the tentativeness of counsel's stated reason, given counsel's concern and conduct at *voir dire* with respect to racial bias the reason lacks validity. Counsel questioned each juror on racial bias toward defendant as an African-American and excused any juror who expressed an inability based upon race to be impartial. It is therefore unlikely that this same counsel would believe that a *Turner voir dire*, like his general racial bias *voir dire*, would be harmful or that it would not have had the similarly desired effect of affording him the opportunity to also excuse any juror who would judge partially because the defendant was black and the victims were white.

Defense counsel's harmful effect reason is, to me, questionable for additional reasons. First, each juror was *voir dired* individually, out of the presence of any other potential jurors. Secondly, individual jurors were already focused during *voir dire* on the issue of race by defendant's prejudice inquiry. Third, the record does not reveal that counsel proposed withholding the race of the victims from the jury once trial commenced.

Finally, concerning counsel's cross-examination testimony, it is not plausible, as counsel suggests, that the jurors, because they had been *voir dired* concerning prejudice toward defendant, would have volunteered any *Turner* prejudice. There was nothing which would have prompted any juror to offer such information during *voir dire*. Counsel stated in both his affidavit and in

his testimony that the jury did not learn of the victims' race until after trial had commenced. By then, of course, it was too late to guard against the risk of the kind of partiality contemplated by *Turner*.

In my view, if in fact counsel was concerned that racial bias might hinder the jury's ability to judge impartially, as I believe defense counsel in this case genuinely was, that concern would have logically prompted an informed counsel to utilize every known legal tool to eliminate that bias. Given counsel's concern and conduct on the issue of bias toward defendant, coupled with his equivocation as to why he "might" not have additionally conducted a *Turner* inquiry, I believe that counsel's failure to inquire is more reasonably explained as a lack of awareness or unfamiliarity with *Turner* and defendant's entitlement to an inquiry regarding interracial crime bias.

Further, the majority of this court can place little reliance on the post-conviction court's disposition of this claim. The post-conviction judge, in rejecting defendant's *voir dire* claim, made the following findings: the jurors were individually *voir dired* and were asked questions indirectly which would detect bias against the defendant for race or otherwise; (2) defendant was consulted personally as to each juror; (3) several jurors were excused because of racial bias; and (4) the evidence does not support the fact that defendant specifically requested any particular question and, even if he did, there is no reason to believe the jurors' responses would be any different than those reached by the questions they were asked.

It appears that the post-conviction judge, like the majority, misperceives both the import and the requirements under *Turner*. Inquiry with respect to prejudice against a defendant as an African-American is not the inquiry deemed important by *Turner* and is, therefore,

insufficient to satisfy *Turner*'s requirements. In point of fact, *voir dire* on racial bias is not required in a capital case simply because the defendant happens to be of African-American descent. *Turner* seeks to address that particular brand of racial prejudice which would cloud jurors' objectivity when the crime is interracial. Thus, while counsel's inquiry concerning bias toward defendant eliminated those jurors who harbored racial prejudice based upon the defendant's descent, that same inquiry was ineffective to detect that bias which potentially exists when the defendant is African-American and the victim is Caucasian.

In this case, the victims' race was not made known to the jurors until after the jury had been impaneled and trial had commenced. Counsel's *voir dire* with respect to prejudice against defendant as an African-American did nothing to satisfy the requirements under *Turner* or to safeguard against interracial crime bias. Further, it is simply impossible to conclude, as did the post-conviction court, that the jurors' responses pursuant to *Turner* would not have been different had the inquiry been made.

In sum, I would find that counsel's failure to request *Turner voir dire* was not based on any particular strategy, but rather on inexperience with capital cases and his lack of familiarity with the *Turner* entitlement. Further, in light of counsel's own expressed concern and conduct regarding the potential for racial bias in Effingham County, this court cannot conclude with any degree of certainty that, once the jurors learned of the interracial nature of these offenses, their ability to be impartial was unaffected. I would therefore find that *Strickland* has been satisfied on this particular claim and remand for a new sentencing hearing.

The Shooter Defense

Defendant's defense theory at trial was that his

separately tried codefendant, Randy Thomas, and not defendant, shot both victims. Defense counsel failed to present this defense at trial.

Defendant and Thomas were both charged with the commission of these offenses. Defendant is shorter in stature than is his codefendant, Thomas. Prior to trial, Bob Bishop, the surviving victim and a material witness in this case, made a statement to a newspaper reporter, Jacqueline Price, that the taller of the two men (Thomas) entered the store first and while the shorter man (defendant) distracted Bishop with a question regarding directions, the taller man shot Bishop. Bishop did not see who shot McAnarney, the nonsurviving victim involved in these offenses.

At trial, Bishop testified that defendant entered the station and asked for the rest room. Thomas, who was taller than defendant, then asked Bishop how far it was to Chicago. A few moments later Bishop was shot in the neck.

Defense counsel did not impeach Bishop with his prior inconsistent statements to the reporter. Further, counsel did not present either testimony or an offer of proof concerning the statements made to the reporter. Defendant asserts that these failings, which deprived him of the presentation of his defense at trial, constitute ineffective assistance of counsel.

The majority, recalling Bishop's trial testimony, concludes that even had counsel been able to impeach Bishop's testimony, no different result would have yielded. In support, the majority notes that Bishop unequivocally identified Thomas as the man who stayed in front of him and asked the distance to Chicago. Further, witnesses testified that defendant had the gun in his waistband as he left the gas station after the robbery; when defendant was picked up by police he had the murdered victim's wallet in his pocket and there

was dried blood on defendant's shoe. Finally, the majority notes that on redirect, Bishop explained that he was distracted while making the statement to the reporter. 175 Ill. 2d at 272.

I am not as assured as is the majority that the same result would yield had defendant been given the opportunity to present his shooter defense. Bishop's postconviction affidavit, which is consistent with his statements to the reporter, contradicts his trial testimony. In his affidavit, Bishop states that, although he has difficulty remembering details of the shooting, it is his belief that the first person who entered the station, and who asked where the bathroom was, is the one who shot him, while the second person, who sought directions, distracted Bishop's attention. "I told [the reporter] something about the tall one, it seemed to me at the time that the first one in was pretty tall." It was Bishop's recollection that the first defendant to enter the station was taller than the second one who entered. Bishop states in his affidavit that he does not know who shot him.

We have two accounts of the event by Bishop, one given through trial testimony and another in his postconviction affidavit: one which suggests that the taller man, Thomas, was the shooter and another which suggests that defendant, the shorter man, was the shooter. So much for Bishop's unequivocal identification of Thomas as the man who sought directions. Further, that defendant was seen with "the gun" in his waistband does not necessarily support a conclusion that he was the shooter. Additionally, the fact that defendant had the murdered victim's wallet supports a conclusion that he robbed the victim, not that he also shot the victim.

Finally and significantly, although there was testimony that defendant's shoe bore human blood, there was no testimony to the effect that the blood matched

the blood of either of the two victims in this crime. Importantly, defendant was found guilty of a fatal shooting which had occurred only weeks prior to this offense. It is, therefore, conceivable that the blood on defendant's shoe was from that prior incident.

Also worth noting, during deliberation, the jurors asked to have Bishop's testimony reread to them. That request was denied, and the jury instead tendered the following question, "Bob Bishop's question concerning identity of man who asked distance to Chicago." Further, although there had been no impeachment testimony concerning the relative heights of each defendant and where each stood in relation to Bishop at the time of the shooting, in closing argument, both the defense and the State, in its rebuttal, argued those points to the jury.

Counsel in his affidavit states that he was aware of Bishop's inconsistent statements; however, he did not interview Bishop prior to trial. At trial he did not call Bishop as a witness (see 134 Ill. 2d R. 238), nor did he, on cross-examination, question Bishop on the issue of the relative height of the assailants.

In light of all of the facts concerning this defense, I am hard-pressed to conclude, as does the majority, that the presentation of the defendant's shooter defense would have made no difference, particularly with respect to sentencing. There was no direct evidence that defendant was the shooter; not even Bishop, who was present during the course of the offense, knows who shot him or McAnarney. The jury, by its question concerning Bishop's testimony and after hearing conflicting arguments on the shooter defense, appears to have placed particular significance on that issue during its deliberation.

Incidentally, on direct appeal, we held that the exclusion of the reporter's potential impeachment

testimony was proper, as there was no inconsistency in Bishop's testimony that would justify the need for the same. Further, we held that any error in the exclusion of such testimony was waived for counsel's failure to include the claim in his post-trial motion. See *People v. Lear*, 143 Ill. 2d 138, 145 (1991). Significantly, it was trial counsel who, in the first place, failed to elicit the inconsistent statements from Bishop which would have provided a basis for the reporter's testimony. Secondly, it was defense counsel who then filed the post-trial motion which omitted this particular issue. In light of defendant's participation in these offenses, as the majority so assuredly concludes, even had the shooter defense been presented, there perhaps would have been no different result on the issue of guilt. However, given that there is a question as to whether the defendant was the shooter, that the jury apparently considered the issue significant in its deliberations, and further, mindful that it takes only one juror to vote against death, I cannot conclude with any assurance that presentation of the shooter defense might not have altered the result at sentencing. Notably, in affidavits presented by two jurors, each one states that an initial paper ballot yielded an 11-1 vote on the issue of death.

As a result of counsel's performance, defendant was left with no presentation of a defense at trial. Although, in the case of a jury, we can never conclude with absolute certainty that another result might have resulted, there is sufficient probability here that, but for counsel's failure to present defendant's shooter defense, defendant might not have received death. I would therefore find that *Strickland* has been satisfied with respect to defendant's shooter defense claim.

### Conclusion

The majority in this court is apparently satisfied that the failure to present the shooter defense and the

failure to *voir dire* on the issue of interracial crime racial bias "in Effingham County" had no prejudicial effect. In the absence of affidavits from each juror to that effect, I am at a loss as to how the majority can, with such assurance, reach this conclusion. A new sentencing hearing is the only available means by which this court can assure that this defendant was fairly sentenced to death. In the absence of a such a judgment, I dissent.