NOTICE: Under Supreme Court Rule 367 a party has 21 days after

the filing of the opinion to request a rehearing. Also, opinions

are subject to modification, correction or withdrawal at anytime

prior to issuance of the mandate by the Clerk of the Court.

Therefore, because the following slip opinion is being made

available prior to the Court's final action in this matter, it

cannot be considered the final decision of the Court. The

official copy of the following opinion will be published by the

Supreme Court's Reporter of Decisions in the Official Reports

advance sheets following final action by the Court.

                                    

                                    

                                    

                 Docket No. 78292--Agenda 15--May 1996.

    THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. TUHRAN A. LEAR,

                               Appellant.

                     Opinion filed February 6, 1997.

                                    

     CHIEF JUSTICE HEIPLE delivered the opinion of the court:

     Following a jury trial in the circuit court of Montgomery

County, defendant, Tuhran Lear, was convicted of first degree

murder, attempted first degree murder, and two counts of armed

robbery. The jury found defendant eligible for the death penalty

and found no mitigating circumstances sufficient to preclude

imposition of the death penalty. Defendant was sentenced to death

and also to two concurrent 60-year prison terms for armed robbery

and attempted murder.

     On direct appeal, this court affirmed the convictions and

sentences. People v. Lear, 143 Ill. 2d 138 (1991). Defendant

subsequently filed a petition for post-conviction relief which he

later amended and supplemented. Of the 11 claims raised in

defendant's post-conviction petition, nine were dismissed by the

court without an evidentiary hearing. After an evidentiary hearing

on the remaining two claims, the court denied defendant's post-

conviction petition.

     Before this court, defendant argues that (1) defense counsel

was ineffective in failing to request a voir dire question

regarding racial bias; (2) defense counsel was ineffective in

failing to properly present the defense theory that defendant was

not the shooter; (3) defense counsel was ineffective at the capital

sentencing hearing; and (4) defendant was denied his constitutional

rights when evidence of other crimes was admitted as aggravating

evidence during the sentencing hearing. We affirm.

     The evidence at trial disclosed that, on September 3, 1988,

defendant, accompanied by Randy Thomas, entered a gas station in

Farmersville, Illinois, and emptied the cash register. During the

robbery, defendant shot the store manager, Gregory McAnarney, and

an employee, Robert Bishop. McAnarney died as a result of the

gunshot wound but Bishop survived and later testified against

defendant.

     Further details regarding the evidence presented at

defendant's trial are set forth in the opinion disposing of

defendant's direct appeal (Lear, 143 Ill. 2d 138) and will be

referred to below only as necessary to dispose of defendant's

instant appeal.

                                 ANALYSIS

     A proceeding under the Post-Conviction Hearing Act is a

collateral attack on the judgment of conviction which is limited to

constitutional issues which were not, and could not have been,

presented on direct review. People v. Gosier, 165 Ill. 2d 16, 20

(1995). Issues decided by a reviewing court on a prior direct

appeal are res judicata as to issues actually decided; issues that

could have been presented during direct review, but were not, are

deemed waived for purposes of post-conviction review. People v.

Franklin, 167 Ill. 2d 1, 9 (1995). On review, the trial court's

determinations regarding the post-conviction petition will not be

disturbed unless they are manifestly erroneous. Franklin, 167 Ill.

2d at 9.

                   I. Ineffective Assistance of Counsel

     In order for defendant to succeed on a claim of ineffective

assistance of counsel, he must show (1) that his counsel's

performance was deficient in that it fell below an objective

standard of reasonableness and (2) that counsel's deficient

performance so prejudiced defendant that there is a reasonable

probability that the outcome of the trial would have been different

without counsel's errors. Strickland v. Washington, 466 U.S. 668,

80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); People v. Simms, 168 Ill.

2d 176 (1995). This standard applies to claims of ineffective

assistance of both trial and appellate counsel. People v. Foster,

168 Ill. 2d 465 (1995). A reviewing court may reject a claim of

ineffective assistance of counsel by finding that defendant was not

prejudiced by counsel's representation without determining whether

counsel's performance was deficient. People v. Erickson, 161 Ill.

2d 82, 90 (1994).

                               A. Voir Dire

     Defendant, an African-American, argues that his trial counsel

was ineffective in failing to inform the jury that the victim was

white and in failing to draft and tender a voir dire question

regarding racial bias. Initially, the State argues that this issue

is waived because it was plainly discernible from the record and

thus could have been raised on direct appeal. We find that this

argument is not waived since it is based on evidence first

presented during the post-conviction hearing, during which

defendant testified that prior to voir dire he had asked defense

counsel to question prospective jurors about racial bias.

     "[T]he Constitution requires a trial judge to question

venirepersons specifically regarding racial prejudice if `special

circumstances' exist that suggest a constitutionally significant

likelihood that racial prejudice might infect a defendant's trial."

People v. Peeples, 155 Ill. 2d 422, 459 (1993). Such special

circumstances exist where racial issues are " `inextricably bound

up with the conduct of the trial.' " Peeples, 155 Ill. 2d at 459-

60, quoting Ristaino v. Ross, 424 U.S. 589, 596-97, 47 L. Ed. 2d

258, 264, 96 S. Ct. 1017, 1021 (1976). In general, that the

defendant and victim are of different races does not in itself

create a special circumstance. Peeples, 155 Ill. 2d at 460.

However, when a capital defendant is on trial for an interracial

crime, the defendant is entitled to have prospective jurors

informed of the race of the victim and questioned about racial

bias, but only as to the sentencing phase, and only if the

defendant specifically requests such an inquiry. Turner v. Murray,

476 U.S. 28, 37, 90 L. Ed. 2d 27, 37, 106 S. Ct. 1683, 1688 (1986).

     After reviewing the record, we find that the circuit court's

decision to dismiss this claim in the post-conviction petition was

not manifestly erroneous. During the post-conviction hearing,

defendant testified that he asked defense counsel to question

prospective jurors about racial bias. However, defense counsel

testified that defendant made no such request. The issue was thus

one of credibility since counsel and defendant gave different views

of what transpired prior to and during voir dire. The trial court

did not find defendant credible on this point and thus dismissed

the claim.

     Since defendant, according to the trial court, did not ask for

an inquiry into racial bias, counsel was not required to make such

an inquiry. Turner, 476 U.S. at 37, 90 L. Ed. 2d at 37, 106 S. Ct.

at 1688. Whether to ask such questions was then left to counsel as

a matter of trial strategy, which is protected under Strickland.

Strickland, 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at

2066; People v. Steidl, 142 Ill. 2d 204, 240 (1991) (trial

counsel's strategic decisions are generally protected by a strong

presumption that they reflect sound strategy rather than

incompetence). Accordingly, we affirm the dismissal of this claim.

                                 B. Trial

                            1. Shooter Defense

     The defense theory at trial was that Thomas, rather than

defendant, did the shooting during the robbery. Defendant argues

that counsel was ineffective for failing to admit a prior statement

made by the victim, Bishop, which defendant contends supported his

theory of the case. The trial court dismissed this claim, finding

that defendant failed to satisfy the prejudice prong of Strickland.

See Erickson, 161 Ill. 2d at 90.

     We first note that this issue is not barred by the doctrine of

res judicata, as the State contends. On direct appeal, this court

addressed whether the trial court erred in refusing to allow

impeachment of Bishop using the reporter's testimony. Lear, 143

Ill. 2d at 145. However, the court never addressed whether counsel

was ineffective in failing to have Bishop's prior statement

admitted. The State further argues that the issue is waived, as it

could have been raised on direct appeal, to which defendant

responds that the issue is preserved due to the ineffectiveness of

appellate counsel in failing to raise the issue. We thus consider

the alleged ineffectiveness of appellate counsel.

     Bishop, who was shot in the neck during the robbery, testified

at trial that defendant came into the store and asked for the rest

room. Bishop pointed to the rest room and defendant walked toward

it, leaving Bishop's line of sight. Defendant's accomplice, Thomas,

who was taller than defendant, then asked Bishop how far it was to

Chicago. A few moments later, Bishop heard a noise behind him, upon

which he was shot in the neck.

     Prior to trial, Bishop allegedly told a newspaper reporter

that the first man who entered the store was the taller of the two,

which, if correct, would suggest that the taller man, Thomas, fired

the shots. At trial, defense counsel cross-examined Bishop about

his statement to the reporter and Bishop replied that he did not

recall what he said to the reporter. However, counsel failed to ask

Bishop whether the taller man entered the store first. When counsel

later attempted to impeach Bishop with the reporter's testimony,

the trial court ruled that there was nothing to impeach since

Bishop never testified about the relative heights of the two

assailants.

     Defendant now argues that counsel was ineffective when he

failed to have Bishop's prior statement admitted, and specifically

contends that counsel erred when he: (1) failed to obtain an

affidavit from Bishop, which could have been used substantively or

to refresh Bishop's recollection; (2) failed to cross-examine

Bishop about who came into the store first; (3) failed to properly

preserve this issue by making an offer of proof of the reporter's

testimony; and (4) failed to request a jury instruction allowing

substantive use of Bishop's prior statement.

     However, had Bishop's statement to the reporter been admitted

as substantive evidence, it would not have impacted the outcome of

the trial. During direct examination, Bishop, using a photograph,

unequivocally identified Thomas as the man who stayed in front of

him and asked the distance to Chicago. Another witness testified

that she saw defendant with the gun in his waistband as he left the

gas station after the robbery. Also, when defendant was picked up

by police he had the murdered victim's wallet in his pocket and

dried blood on his shoe. Moreover, on redirect, Bishop explained

that he was distracted while making the statement to the reporter

because his wife was at work and he was fixing supper while

supervising his four young children.

     In light of this evidence, defendant was not prejudiced when

counsel failed to introduce into evidence Bishop's prior statement.

Since we find no prejudice, we affirm the trial court's dismissal

of this claim of ineffective assistance of counsel. Erickson, 161

Ill. 2d at 90.

                               C. Sentencing

     Defendant raises various ineffective-assistance-of-counsel

claims arising out of the sentencing hearing. Therein, the State

presented aggravating evidence of two prior murders committed by

defendant. First, the State presented evidence of a 1974 juvenile

murder conviction which occurred when defendant was 15 years old.

Second, the State presented evidence that defendant committed a

robbery/murder at a gas station in Collinsville, Illinois, nine

days before the instant crime.

     Defense counsel presented three witnesses in mitigation.

Defendant's girlfriend testified that she had a good relationship

with defendant and that he was "always there" for her when she

needed help. She also stated that defendant had a good relationship

with his young daughter. In addition, defendant's mother testified

that defendant had been an obedient child and an average student.

Finally, defendant's sister testified that he was a good child who

got along well with his brothers and sisters. She also stated that

defendant was a good parent who supported his daughter regularly.

              1. Counsel's Inexperience and Limited Resources

     Defendant argues that trial counsel's inexperience and lack of

resources constituted a per se violation of his right to effective

assistance of counsel. Defendant first argues that trial counsel

was per se ineffective because no co-counsel was appointed.

Defendant cites to the guidelines for capital cases provided by the

American Bar Association and the National Legal Aid and Defender

Association, which recommend that two attorneys be appointed to

represent each capital defendant. Second, defendant argues that

trial counsel was per se ineffective because he was young,

inexperienced, and had insufficient resources. Testimony by defense

counsel at the post-conviction hearing showed that: counsel

graduated from law school two years prior to his appointment as

counsel for defendant; this was both counsel's first homicide and

first capital case; counsel had never received any formal training

for defending a capital case; counsel's office employed no other

attorneys and no investigator; the only assistance received by

counsel was 60 hours of legal research help from another attorney;

and, during the time counsel was representing defendant, he was

responsible for numerous other pending cases.

     Having a counsel with limited resources and limited experience

is not a circumstance which this court has held to constitute per

se ineffective assistance of counsel. See, e.g., People v. Hattery,

109 Ill. 2d 449, 461 (1985) (counsel failed to present a defense);

People v. Brandon, 162 Ill. 2d 450 (1994) (counsel failed to

request a fitness hearing for a defendant taking psychotropic

medication). Therefore, the proper inquiry is whether counsel's

representation fell below the standard of ineffective assistance of

counsel set forth in Strickland.

     Applying Strickland to the instant case, we reject defendant's

ineffective-assistance claim because these alleged deficiencies did

not result in prejudice to defendant. Erickson, 161 Ill. 2d at 90.

Defendant was convicted by overwhelming evidence, after which

substantial aggravating evidence was presented, including evidence

of two prior murders committed by defendant. Defendant has failed

to show how additional personnel or financial resources would have

resulted in a sentence other than death. We thus affirm the trial

court's dismissal of defendant's claim of ineffective assistance of

counsel based on counsel's level of experience and amount of

resources.

                   2. Continuance of Sentencing Hearing

     During the sentencing hearing, counsel unsuccessfully

requested a continuance in order to further prepare for the

proceedings. Defendant now argues that counsel was ineffective in

failing to request a continuance prior to the sentencing hearing in

order to further investigate the Collinsville crime and the

juvenile conviction.

     The State contends that these issues are waived since they

could have been raised on direct appeal. With regard to the

Collinsville crime, we agree since no new evidence was presented

about that crime during the post-conviction proceedings. However,

a claim based on failure to investigate the juvenile crime was not

waived because it was based on evidence first presented during the

post-conviction proceedings.

     During the post-conviction proceedings, defendant presented

evidence that, as a juvenile, he committed murder because he was

"provoked over a period of time and probably was fed up with being

picked on." Such evidence, however, is no justification for killing

another human being and would have been insufficient to counteract

the aggravating nature of the juvenile murder conviction. Thus,

defendant was not prejudiced by counsel's failure to request a

continuance to allow further investigation that may have led to the

discovery of this evidence. Accordingly, the trial court properly

dismissed this claim of ineffective assistance of counsel.

Erickson, 161 Ill. 2d at 90.

                               3. Mitigation

     Next defendant argues that trial counsel was ineffective in

preparing and presenting mitigating evidence. He argues that

counsel was ineffective in that he (1) failed to renew a previously

denied request for funds to hire a mitigation expert; (2) used

available funds to acquire legal research assistance rather than

mitigation investigation assistance; (3) failed to adequately

question defendant's friends and family members; and (4) failed to

argue to the jury that defendant's past substance abuse impaired

his judgment. The State responds that none of these instances were

a violation of defendant's right to effective assistance of counsel

because defendant failed to show how these omissions prejudiced

defendant. Specifically, the State contends that doing the above

would not have uncovered mitigating evidence sufficient to change

the outcome of this case.

     During the post-conviction hearing, defendant presented

additional mitigating evidence that was not presented during

sentencing. Three former correctional officers testified as to

defendant's good conduct while he was in juvenile detention. Angela

Granberry, who lived with defendant for several years and who was

the mother of defendant's daughter, testified that he was a good

family man, provided well for their daughter and helped around the

house while she was attending college. She also stated that he was

good with kids, including his own daughter and Angela's son, and

that he was a good worker. Angela's father, sister and aunt also

testified to these facts. A mitigation specialist from the Capital

Resource Center prepared defendant's social history, outlining his

disadvantaged childhood and lack of childhood supervision. Dr.

Risolo, a psychiatrist, testified as to defendant's substance abuse

history and his mother's failure to teach values. Finally, a friend

of defendant testified about defendant's drug and alcohol use

during the years prior to the instant crime.

     The additional evidence presented through the testimony of

defendant's family at the post-conviction hearing was largely

cumulative of evidence presented during the sentencing hearing. The

remainder of the additional evidence was not sufficiently

mitigating, in light of the aggravating evidence, to change the

outcome of the sentencing hearing. We thus find that defendant was

not prejudiced by failure to present his disadvantaged childhood

and substance abuse history (see People v. Christiansen, 116 Ill.

2d 96, 129 (1987) (death penalty appropriate despite mitigating

evidence that included drug addiction and a deprived childhood);

People v. Johnson, 146 Ill. 2d 109, 145 (1991) (death penalty

appropriate despite mitigating evidence that included drug and

alcohol abuse, as well as abuse as a child)), or his good behavior

while incarcerated as a juvenile (see People v. Garcia, 165 Ill. 2d

409, 437 (1995) (defendant's good behavior in prison not

sufficiently mitigating to preclude a death sentence)).

Accordingly, we affirm the trial court's dismissal of this claim.

                  4. Psychological/Physiological Evidence

     Defendant argues that counsel was ineffective for failing to

seek mitigating evidence concerning his possible psychological and

physiological defects. Specifically, defendant argues that counsel

was ineffective because he (1) failed to obtain the court file of

defendant's juvenile conviction, which contained a fitness report

and a psychiatric report; (2) failed to obtain a psychological

evaluation in response to the information contained in the juvenile

court file; and (3) failed to obtain a neurological evaluation to

determine if defendant had brain damage as a result of past

substance abuse.

     At the post-conviction hearing, a psychiatrist, Dr. Risolo,

testified regarding her psychological evaluation of defendant prior

to the post-conviction hearing. Dr. Risolo testified that defendant

had antisocial personality disorder and mild neurotic depression.

She further testified that defendant's substance abuse might have

contributed to some neurological disfunction but stated that no

disfunction had ever been conclusively proven.

     We find that defendant was not prejudiced by counsel's failure

to present this evidence during the sentencing hearing. Given the

overwhelming aggravating evidence and the relatively weak

mitigating evidence, evidence of defendant's antisocial personality

disorder and depression would not have resulted in a sentence other

than death. See People v. Montgomery, 112 Ill. 2d 517, 533 (1986)

(death penalty appropriate despite defendant's antisocial

personality disorder and extreme mental and emotional

disturbances). Furthermore, Dr. Risolo's testimony about a

possible, unproven neurological disfunction also would have been

insufficient to change the outcome of the sentencing hearing. See

Montgomery, 112 Ill. 2d at 533. Since defendant was not prejudiced

by the failure to present this evidence, we affirm the dismissal of

this claim of ineffective assistance. Erickson, 161 Ill. 2d at 90.

                     5. Codefendant's Lesser Sentence

     Defendant, citing Messer v. State, 330 So. 2d 137 (Fla. 1976),

argues that counsel was ineffective in failing to argue, as a

nonstatutory mitigating circumstance, the lesser sentence given to

Thomas, his codefendant. As the State observes, this precise

argument was rejected by this court in People v. Page, 156 Ill. 2d

258, 270-72 (1993). Accordingly, we affirm the dismissal of this

claim of the post-conviction petition.

                     6. Prosecutor's Closing Argument

     Defendant argues that defense counsel was ineffective when he

failed to object to the prosecutor's request that the jury

"recommend" a death sentence. Defendant argues that the statement

improperly misled the jury regarding its responsibility for

imposing the death penalty. As the State correctly observes, this

issue is waived because it was not raised on direct appeal and is

not based on any new evidence presented during the post-conviction

proceedings. However, insofar as defendant argues that the issue is

preserved for review because it was not raised on direct appeal due

to the ineffectiveness of appellate counsel, we will review the

claim.

     The State may not, in closing argument, mislead the jury to

believe that the ultimate responsibility for a defendant's death

penalty rests elsewhere. Caldwell v. Mississippi, 472 U.S. 320, 86

L. Ed. 2d 231, 105 S. Ct. 2633 (1985). When such an allegation is

made, "[t]he relevant inquiry *** is whether in consideration of

all facts and circumstances, the State has misled the jury

regarding its sentencing role. No single factor is necessarily

dispositive." People v. Flores, 153 Ill. 2d 264, 287 (1992).

Therefore, in order to determine whether the argument was improper,

we must look at the State's closing argument as a whole.

     In two instances during her closing argument, the prosecutor

asked the jury to "impose and recommend the death sentence." We

find that those statements did not improperly mislead the jury

because use of the word "impose" adequately counteracted any

improper effect resulting from use of the word "recommend." As her

final words to the jury, the prosecutor stated, "We ask you to

recommend that the death sentence be imposed. Thank you." The jury

was not misled by this statement either because, only a few moments

earlier, the prosecutor had expressly acknowledged the weight of

the jury's responsibility for the death penalty, recognizing "that

for responsible people [imposing and recommending the death

penalty] is not an easy thing." Furthermore, the jury instructions

clearly apprised the jury of its responsibility for imposing the

death penalty.

     Under these circumstances, we find that the State did not

improperly diminish the jury's sense of responsibility. Since the

State's closing argument was not misleading, appellate counsel was

not ineffective for failing to raise the issue on direct appeal and

the issue is therefore waived. Accordingly, we affirm the trial

court's dismissal of this claim of the post-conviction petition.

                       7. Defense's Closing Argument

     Defendant argues that counsel was ineffective in his closing

argument during the second phase of the sentencing hearing because

he merely focused upon the death penalty generally without arguing

mitigating circumstances. On direct appeal, this court stated:

"Defendant complains that he received ineffective assistance at the

second stage of the death penalty hearing in that defense counsel

*** confined his argument to the jury to a plea that there is no

justification to take a human life. Defendant's claims are

meritless." Lear, 143 Ill. 2d at 151-52. Since this issue was

addressed on direct appeal it is now res judicata and may not be

relitigated during this post-conviction appeal. We thus affirm the

circuit court's dismissal of this claim.

                         II. Aggravating Evidence

     Defendant argues that evidence of a crime he committed in

Collinsville, Illinois, was improperly used as aggravating

evidence. First, defendant argues that he was denied due process,

effective assistance of counsel, and his right to be free from

cruel and unusual punishment when evidence of the Collinsville

crime was admitted in the absence of requested counsel for the

Collinsville crime. Second, defendant argues that he was denied

effective assistance of counsel when defense counsel failed to

object to the evidence's introduction on due process grounds.

     The State responds that any challenge to the introduction of

evidence of the Collinsville crime is res judicata because, during

direct appeal, this court affirmed the use of this evidence when it

stated:

               "Defendant asserts that the trial court erred in

          allowing the jury to consider evidence of unadjudicated

          criminal conduct during the second stage of the

          sentencing hearing. We disagree. This court has

          previously held that evidence showing the defendant's

          commission of other crimes or acts of misconduct is

          admissible even though the defendant was not prosecuted

          or convicted for such conduct. People v. Ramirez, 98 Ill.

          2d, 439, 460-61 (1983)." Lear, 143 Ill. 2d at 152-53.

     We agree that this issue cannot be raised again here and thus

affirm the trial court's decision to dismiss this claim.

                                CONCLUSION

     For the reasons stated above, we affirm the judgment of the

circuit court. We direct the clerk of this court to enter an order

setting Wednesday, May 21, 1997, as the date on which defendant's

sentence of death is to be carried out. The defendant shall be

executed in a manner provided by law. 725 ILCS 5/119--5 (West

1994). The clerk of this court shall send a certified copy of the

mandate in this case to the Director of Corrections, the warden at

Stateville Correctional Center, and the warden of the institution

where the defendant is now confined.

Affirmed.

                                                                         

     JUSTICE McMORROW, concurring in part and dissenting in part:

     I concur in the majority opinion to the extent that it affirms

defendant's convictions for murder, attempted murder, and armed

robbery. However, I join in the dissent of Justice Freeman only

with respect to his analysis and conclusions on the issue of trial

strategy during voir dire.

     JUSTICE FREEMAN, dissenting:

     In this appeal from the denial of post-conviction relief,

defendant, as petitioner, argues that he was denied effective

assistance of counsel for several reasons. I take issue with the

majority's analysis and resolution of at least two of defendant's

claims. Because there is an unreasonable risk that this defendant

was unfairly sentenced to death, I dissent.

                                 Voir Dire

     Defendant claims ineffectiveness in that his trial counsel,

during voir dire, failed to raise the issue of racial bias to the

venire in accordance with Turner v. Murray, 476 U.S. 28, 90 L. Ed.

2d 27, 106 S. Ct. 1683 (1986), and People v. Peeples, 155 Ill. 2d

422 (1993). The majority correctly notes that when a capital

defendant is on trial for an interracial crime the defendant is

entitled to have prospective jurors informed of the race of the

victim and questioned about racial bias. Slip op at 3. The majority

errs, however, in its statement of how the right is invoked and,

correspondingly, in its analysis of counsel's failure to assert the

right in this case.

     In his petition, defendant asserted that he had requested that

counsel make a Turner inquiry; however, counsel refused.

The majority, finding that defendant's post-conviction testimony to

that effect was contradicted by counsel's testimony holds that

"[t]he issue was thus one of credibility," and the trial court did

not find defendant credible on this point. Slip op at 3. The

majority then holds that because the court found that defendant

himself made no such request of counsel, counsel was not required

to make the inquiry. Slip op. at 4.

     The majority misstates the law concerning how the right to a

Turner inquiry is invoked. Turner does not contemplate that a

defendant, who is represented by counsel, will, in the first place,

be aware of such an entitlement, or that that defendant will, in

the second place, specifically request that his attorney make such

an inquiry. That a defendant himself fails to request the Turner

voir dire does not deprive him or her of his entitlement to such an

inquiry. Many of the rights of an accused, including constitutional

rights, are such that only trained experts can comprehend their

full significance.

     By its analysis, the majority effectively grafts onto the

Turner entitlement a new requirement--that the defendant as client

must request the inquiry. However, Turner merely holds that "a

capital defendant accused of an interracial crime is entitled to

have prospective jurors informed of the race of the victim and

questioned on the issue of racial bias. *** Also, a defendant

cannot complain of a judge's failure to question the venire on

racial prejudice unless the defendant has specifically requested

such an inquiry."

     Significantly, the Court in Morgan v. Illinois, 504 U.S. 719,

119 L. Ed. 2d 492, 112 S. Ct. 2222 (1992), in setting out the

requirement for a reverse-Witherspoon inquiry, relies largely on

the reasoning in Turner and uses much the same language. Morgan,

504 U.S. at 736, 119 L. Ed. 2d at 507, 112 S. Ct. at 2233

("[p]etitioner was entitled, upon his request, to inquiry

discerning those jurors who," prior to termination of the case, had

predetermined the issue of death (emphasis added)). I have not

heard it suggested that, because the defendant himself does not

request the reverse-Witherspoon inquiry, counsel is not required to

inquire. Entitlement to a Turner inquiry, like the entitlement to

the reverse-Witherspoon inquiry, is far too important to depend on

the request of an untrained criminal defendant.

     Knowledge of a constitutional entitlement to inquiry on

matters such as a predisposition to impose death or, in this case,

on racial bias, is within the knowledge of the criminal defense

attorney, not the client. Thus, the viability of defendant's Turner

claim does not turn on whether the post- conviction court

disbelieved that defendant, as client, requested that counsel make

such an inquiry.

     The majority next reasons that since defendant did not request

the Turner inquiry, whether to conduct such an inquiry became a

matter of trial strategy, not subject to the Strickland

ineffectiveness analysis (see Strickland v. Washington, 466 U.S.

668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)). Slip op. at 4.

      Certainly, what questions will be posed on voir dire may

properly fall within the bounds of trial strategy. However,

counsel's failure to inquire on Turner racial bias was not

converted to a strategic decision merely because defendant failed

to request such an inquiry. Strategic decisions are those decisions

which flow from counsel's particular knowledge and expertise. Thus,

while a decision on whether to voir dire on particular issues may

be a matter of trial strategy, the absence of voir dire on such

issues might just as well be a matter of ineptitude, inexperience,

lack of preparation or unfamiliarity with basic legal principles.

In such case, the failure to voir dire amounts to ineffective

assistance of counsel. 1 ABA Standards for Criminal Justice §4--5.2

(2d ed. Supp. 1986).

     Here, it is significant that counsel had been admitted to the

bar for only a two-year period prior to being assigned this, his

very first, capital case. While the extent and nature of counsel's

legal experience alone do not necessarily support a conclusion of

ineffective assistance, those facts take on particular significance

in the evaluation of a Turner claim. This is so because voir dire

pursuant to Turner is available to capital defendants only. Unless

there is evidence here to support a finding that counsel's failure

to request a Turner inquiry flowed from his particular knowledge

and expertise concerning the nature and purpose of the Turner

inquiry, there can be no basis upon which to conclude that such a

failing was the result of trial strategy.

     Proper resolution of the issue requires more than cursory

consideration; it necessarily involves thorough review and

consideration of counsel's post-conviction affidavit and testimony

in the context of his conduct of voir dire. Based upon my review,

I believe that the record supports the conclusion that counsel was

unfamiliar with the Turner entitlement and his failure to voir dire

was, therefore, not a matter of strategy.

     In his affidavit, counsel first states that, during voir dire,

he asked each potential juror whether there was anything about

defendant that would cause him or her to be biased or prejudiced.

His purpose in asking that question was to address the issue of

racial prejudice because defendant was black. Counsel next states

that he "had no reason for not asking a question of the venire on

voir dire whether the race of the victim would be a factor in

causing them to be biased or prejudiced against Mr. Lear." Finally,

counsel states that he might have discussed with defendant asking

a question concerning racial bias because of the victims' race, and

he may have said that such a question would get the jurors "pissed

off" and that they would be there three weeks and he may have

preferred not to harp on the victims' race because he might have

thought that that was more harmful, although he did not recall.

     The only definitive statements concerning voir dire in

counsel's affidavit are that: (1) he was concerned about racial

bias and (2) he had no reason for failing to request the Turner

inquiry. The remainder of counsel's statements concerning what he

might have thought regarding a Turner inquiry can only be

characterized as tentative and equivocal at best.

     Counsel's subsequent direct examination testimony at the post-

conviction hearing is consistent with the statements in his

affidavit. After being shown his affidavit, counsel testified

concerning the Turner inquiry in much the same equivocal manner as

his statements in his affidavit. Particularly telling are the

prosecutor's cross-examination questions and counsel's answers

thereto.

               "Ms. Dobrinic [Assistant State's Attorney]: Now, did

          you ever in the course of your relationship have--well,

          did [defendant] ever express a concern that he might be

          an African-American defendant being tried in a

          predominantly Caucasian county?

               Mr. Grigsby [Defense Attorney]: I am sure that there

          would have been some discussions regarding that. Usually

          that subject came up whenever I represented African-

          Americans in this county.

               ***

               Ms. Dobrinic: Mr. Grigsby, as a trial attorney and

          under the circumstances that we were in being in

          Effingham, Illinois, with the defendant, did you think it

          was proper to find out jurors attitudes toward race--or

          let me say this. Did you think it was important to find

          out their attitudes towards race?

               Mr. Grigsby: Well, yes, I thought that was

          important.

               Ms. Dobrinic: Do you feel like you did that by your

          voir dire of these jurors?

               Mr. Grigsby: Yes, I felt that the race issue was

          brought out during the voir dire by the questions.

               Ms. Dobrinic: Did you find it necessary to

          specifically ask jurors are you prejudiced against

          African-Americans?

               Mr Grigsby: No, no, because the jurors understood

          the question and would volunteer any prejudice they had."

     Four things are apparent from counsel's affidavits and

testimony and none of them suggest strategy with respect to Turner:

(1) counsel was concerned about racial prejudice in predominantly

white Effingham County; (2) counsel had no reason for failing to

request a Turner inquiry; (3) counsel "might have" chosen not to

inquire regarding Turner racial bias because it "might have" been

more harmful and (4) counsel believed his inquiry concerning

prejudice toward the defendant was sufficient to prompt a volunteer

admission concerning any type of racial bias.

     Based on counsel's statements and testimony, I would not find

that his failure to request a Turner inquiry was in fact trial

strategy. Counsel stated that he was concerned about prejudice in

predominantly white Effingham County. So concerned about racial

bias was counsel that he specifically questioned and excused those

particular jurors who would judge partially based on defendant's

race. Though actively inquiring and ferreting out any biased juror

prior to the commencement of trial, counsel now offers that he

might have chosen not to additionally inquire concerning

interracial crime bias because such an inquiry might have harmfully

focused the jury's attention on that fact.

     Even if I could disregard the tentativeness of counsel's

stated reason, given counsel's concern and conduct at voir dire

with respect to racial bias the reason lacks validity. Counsel

questioned each juror on racial bias toward defendant as an

African-American and excused any juror who expressed an inability

based upon race to be impartial. It is therefore unlikely that this

same counsel would believe that a Turner voir dire, like his

general racial bias voir dire, would be harmful or that it would

not have had the similarly desired effect of affording him the

opportunity to also excuse any juror who would judge partially

because the defendant was black and the victims were white.

     Defense counsel's harmful effect reason is, to me,

questionable for additional reasons. First, each juror was voir

dired individually, out of the presence of any other potential

jurors. Secondly, individual jurors were already focused during

voir dire on the issue of race by defendant's prejudice inquiry.

Third, the record does not reveal that counsel proposed withholding

the race of the victims from the jury once trial commenced.

     Finally, concerning counsel's cross-examination testimony, it

is not plausible, as counsel suggests, that the jurors, because

they had been voir dired concerning prejudice toward defendant,

would have volunteered any Turner prejudice. There was nothing

which would have prompted any juror to offer such information

during voir dire. Counsel stated in both his affidavit and in his

testimony that the jury did not learn of the victims' race until

after trial had commenced. By then, of course, it was too late to

guard against the risk of the kind partiality contemplated by

Turner.

     In my view, if in fact counsel was concerned that racial bias

might hinder the jury's ability to judge impartially, as I believe

defense counsel in this case genuinely was, that concern would have

logically prompted an informed counsel to utilize every known legal

tool to eliminate that bias. Given counsel's concern and conduct on

the issue of bias toward defendant, coupled with his equivocation

as to why he "might" not have additionally conducted a Turner

inquiry, I believe that counsel's failure to inquire is more

reasonably explained as a lack of awareness or unfamiliarity with

Turner and defendant's entitlement to an inquiry regarding

interracial crime bias.

     Further, the majority of this court can place little reliance

on the post-conviction court's disposition of this claim. The post-

conviction judge, in rejecting defendant's voir dire claim, made

the following findings: the jurors were individually voir dired and

were asked questions indirectly which would detect bias against the

defendant for race or otherwise; (2) defendant was consulted

personally as to each juror; (3) several jurors were excused

because of racial bias; and (4) the evidence does not support the

fact that defendant specifically requested any particular question

and, even if he did, there is no reason to believe the jurors'

responses would be any different than that reached by the questions

they were asked.

     It appears that the post-conviction judge, like the majority,

misperceives both the import and the requirements under Turner.

Inquiry with respect to prejudice against a defendant as an

African-American is not the inquiry deemed important by Turner and

is, therefore, insufficient to satisfy Turner's requirements. In

point of fact, voir dire on racial bias is not required in a

capital case simply because the defendant happens to be of African-

American descent. Turner seeks to address that particular brand of

racial prejudice which would cloud jurors' objectivity when the

crime is interracial. Thus, while counsel's inquiry concerning bias

toward defendant eliminated those jurors who harbored racial

prejudice based upon the defendant's descent, that same inquiry was

ineffective to detect that bias which potentially exists when the

defendant is African-American and the victim is Caucasian.

     In this case, the victims' race was not made known to the

jurors until after the jury had been impaneled and trial had

commenced. Counsel's voir dire with respect to prejudice against

defendant as an African-American did nothing to satisfy the

requirements under Turner or to safeguard against interracial crime

bias. Further, it is simply impossible to conclude, as did the

post-conviction court, that the jurors responses pursuant to Turner

would not have been different had the inquiry been made.

     In sum, I would find that counsel's failure to request Turner

voir dire was not based on any particular strategy, but rather on

inexperience with capital cases and his lack of familiarity with

the Turner entitlement. Further, in light of counsel's own

expressed concern and conduct regarding the potential for racial

bias in Effingham County, this court cannot conclude with any

degree of certainty that, once the jurors learned of the

interracial nature of these offenses, their ability to be impartial

was unaffected. I would therefore find that Strickland has been

satisfied on this particular claim and remand for a new sentencing

hearing.

                            The Shooter Defense

     Defendant's defense theory at trial was that his separately

tried codefendant, Randy Thomas, and not defendant, shot both

victims. Defense counsel failed to present this defense at trial.

     Defendant and Thomas were both charged with the commission of

these offenses. Defendant is shorter in stature than is his

codefendant, Thomas. Prior to trial, Bob Bishop, the surviving

victim and a material witness in this case, made a statement to a

newspaper reporter, Jacqueline Price, that the taller of the two

men (Thomas) entered the store first and while the shorter man

(defendant) distracted Bishop with a question regarding directions,

the taller man shot Bishop. Bishop did not see who shot McArnarney,

the nonsurviving victim involved in +these offenses.

     At trial, Bishop testified that defendant entered the station

and asked for the rest room. Thomas, who was taller than defendant,

then asked Bishop how far it was to Chicago. A few moments later

Bishop was shot in the neck.

     Defense counsel did not impeach Bishop with his prior

inconsistent statements to the reporter. Further, counsel did not

present either testimony or an offer of proof concerning the

statements made to the reporter. Defendant asserts that these

failings, which deprived him of the presentation of his defense at

trial, constitute ineffective assistance of counsel.

     The majority, recalling Bishop's trial testimony, concludes

that even had counsel been able to impeach Bishop's testimony, no

different result would have yielded. In support, the majority notes

that Bishop unequivocally identified Thomas as the man who stayed

in front of him and asked the distance to Chicago. Further,

witnesses testified that defendant had the gun in his waistband as

he left the gas station after the robbery; when defendant was

picked up by police he had the murdered victim's wallet in his

pocket and there was dried blood on defendant's shoe. Finally, the

majority notes that on redirect, Bishop explained that he was

distracted while making the statement to the reporter. Slip op. at

5.

     I am not as assured as is the majority that the same result

would yield had defendant been given the opportunity to present his

shooter defense. Bishop's post-conviction affidavit, which is

consistent with his statements to the reporter, contradicts his

trial testimony. In his affidavit, Bishop states that, although he

has difficulty remembering details of the shooting, it is his

belief that the first person who entered the station, and who asked

where the bathroom was, is the one who shot him, while the second

person, who sought directions, distracted Bishop's attention. "I

told [the reporter] something about the tall one, it seemed to me

at the time that the first one in was pretty tall." It was Bishop's

recollection that the first defendant to enter the station was

taller than the second one who entered. Bishop states in his

affidavit that he does not know who shot him.

     We have two accounts of the event by Bishop, one given through

trial testimony and another in his post-conviction affidavit; one

which suggests that the taller man, Thomas, was the shooter and

another which suggests that defendant, the shorter man, was the

shooter. So much for Bishop's unequivocal identification of Thomas

as the man who sought directions.  Further, that defendant was seen

with "the gun" in his waistband does not necessarily support a

conclusion that he was the shooter. Additionally, the fact that

defendant had the murdered victim's wallet supports a conclusion

that he robbed the victim, not that he also shot the victim.

     Finally and significantly, although there was testimony that

defendant's shoe bore human blood, there was no testimony to the

effect that the blood matched the blood of either of the two

victims in this crime. Importantly, while awaiting trial on these

offenses, defendant was found guilty of a fatal shooting which had

occurred only weeks prior to this offense. It is, therefore,

conceivable that the blood on defendant's shoe was from that prior

incident.

     Also worth noting, during deliberation, the jurors asked to

have Bishop's testimony reread to them. That request was denied,

and the jury instead tendered the following question, "Bob Bishop's

question concerning identity of man who asked distance to Chicago."

Further, although there had been no impeachment testimony

concerning the relative heights of each defendant and where each

stood in relation to Bishop at the time of the shooting, in closing

argument, both the defense and the State, in its rebuttal, argued

those points to the jury.

     Counsel in his affidavit states that he was aware of Bishop's

inconsistent statement; however, he did not interview Bishop prior

to trial. At trial he did not call Bishop as a witness (see 134

Ill. 2d R. 238), nor did he, on cross-examination, question Bishop

on the issue of the relative height of the assailants.

     In light of all of the facts concerning this defense, I am

hardpressed to conclude, as does the majority, that the

presentation of the defendant's shooter defense would have made no

difference, particularly with respect to sentencing. There was no

direct evidence that defendant was the shooter; not even Bishop,

who was present during the course of the offense, knows who shot

him or McArnarney. The jury, by its question concerning Bishop's

testimony and after hearing conflicting arguments on the shooter

defense, appears to have placed particular significance on that

issue during its deliberation.

     Incidentally, on direct appeal, we held that the exclusion of

the reporter's potential impeachment testimony was proper, as there

was no inconsistency in Bishop's testimony that would justify the

need for the same. Further, we held that any error in the exclusion

of such testimony was waived for counsel's failure to include the

claim in his post-trial motion. See People v. Lear, 143 Ill. 2d

138, 145 (1991). Significantly, it was trial counsel who, in the

first place, failed to elicit the inconsistent statements from

Bishop which would have provided a basis for the reporter's

testimony. Secondly, it was defense counsel who then filed the

post-trial motion which omitted this particular issue. In light of

defendant's participation in these offenses, as the majority so

assuredly concludes, even had the shooter defense been presented,

there perhaps would have been no different result on the issue of

guilt. However, given that there is a question as to whether the

defendant was the shooter, that the jury apparently considered the

issue significant in its deliberations, and further, mindful that

it takes only one juror to vote against death, I cannot conclude

with any assurance that presentation of the shooter defense might

not have altered the result at sentencing. Notably, in affidavits

presented by two jurors, each one states that an initial paper

ballot yielded an 11-1 vote on the issue of death.

     As a result of counsel's performance, defendant was left with

no presentation of a defense at trial. Although, in the case of a

jury, we can never conclude with absolute certainty that another

result might have resulted, there is sufficient probability here

that, but for counsel's failure to present defendant's shooter

defense, defendant might not have received death. I would therefore

find that Strickland has been satisfied with respect to defendant's

shooter defense claim.

                                Conclusion

     The majority in this court is apparently satisfied that the

failure to present the shooter defense and the failure to voir dire

on the issue of interracial crime racial bias "in Effingham County"

had no prejudicial effect. In the absence of affidavits from each

juror to that effect, I am at a loss as to how the majority can,

with such assurance, reach this conclusion. A new sentencing

hearing is the only available means by which this court can assure

that this defendant was fairly sentenced to death. In the absence

of a such a judgment, I dissent.