NOTICE

Decision filed 12/04/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 241018-U

NO. 5-24-1018

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 18-CF-1085 |
| | ) | |
| CURTIS T. HAIRSTON, | ) | Honorable |
| | ) | Matthew D. Lee, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

JUSTICE MOORE delivered the judgment of the court.
Justices Barberis and Hackett concurred in the judgment.

**ORDER**

¶ 1   *Held*: Where the defendant failed to make a substantial showing of constitutionally ineffective assistance by trial counsel or by direct-appeal counsel, the second-stage dismissal of the defendant's amended postconviction petition is affirmed.

¶ 2   The defendant, Curtis T. Hairston, is serving a 45-year prison sentence for predatory criminal sexual assault of a child. He now appeals from an order of the trial court that granted the State's motion to dismiss his amended petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). The defendant's appointed attorney in this appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit and, on that basis, has filed with this court a motion for leave to withdraw as counsel, along with a memorandum of law in support of the motion. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987).

1

The defendant has filed a response. This court grants the motion to withdraw and affirms the dismissal order.

¶ 3                                    I. BACKGROUND

¶ 4    In August 2018, the State charged the defendant with one count of predatory criminal sexual assault of a child. See 720 ILCS 5/11-1.40(a)(1) (West 2016). It was alleged that between February and August of 2017, the defendant inserted his finger into the vagina of T.H. The defendant was in his early 40s at the time, and T.H. was 9 years old. The defendant was familiar with T.H. through T.H.'s mother. In October 2018, the State charged the defendant with a second count of predatory criminal sexual assault of a child, alleging the same conduct with the same victim, but this time committed between July 2017 and August 2017. Each count was a Class X felony punishable by imprisonment for a term of 6 to 60 years. *Id.* § 11-1.40(b)(1).

¶ 5    The defendant requested the appointment of counsel, and the trial court appointed the public defender's office to represent him. The county public defender, attorney Janie Miller-Jones, personally handled the defendant's case throughout the underlying proceedings until the perfection of a direct appeal.

¶ 6    In early March 2019, the defendant proceeded to a jury trial. The jury could not reach a verdict, and the trial court declared a mistrial.

¶ 7    In late March 2019, the trial court conducted the defendant's second jury trial. This time, the jury found the defendant guilty of the earlier-filed count of predatory criminal sexual assault of a child, but not guilty of the later-filed count. In May 2019, the trial court sentenced the defendant to imprisonment for 45 years.

¶ 8    The clerk of the circuit court filed, on the defendant's behalf, a notice of appeal to the Appellate Court, Fourth District, thus perfecting the direct appeal. The trial court appointed appellate counsel for the defendant.

¶ 9    In the direct appeal, the defendant argued that the trial court had failed to comply with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) (requiring the court to question potential jurors on four fundamental legal principles) and that the State had committed reversible error by defining reasonable doubt for the jury. On March 2, 2021, the Appellate Court, Fourth District, entered its judgment in the case. The appellate court rejected both of the defendant's arguments and affirmed the judgment of conviction. *People v. Hairston*, 2021 IL App (4th) 190326-U. The defendant filed a petition for leave to appeal (PLA) to the Illinois Supreme Court, which denied the PLA. *People v. Hairston*, No. 127150 (Sept. 29, 2021).

¶ 10    The appellate court's unpublished decision in the direct appeal contains a thorough summary of the evidence adduced at the defendant's second trial. The trial evidence will be discussed herein only when needed to decide this appeal.

¶ 11    On June 30, 2022, the clerk of the circuit court file-stamped the defendant's verified *pro se* petition for postconviction relief. The defendant raised a total of eight postconviction claims—seven of which alleged ineffective assistance of trial counsel, for alleged errors committed pretrial and at trial, and one of which alleged ineffective assistance of direct-appeal counsel for not raising the claims concerning trial counsel. More detailed information on these *pro se* postconviction claims will be provided as necessary to decide this appeal. The *pro se* petition was silent on the issue of whether the petition was timely or untimely.

¶ 12    Attached to the *pro se* postconviction petition was an affidavit from the defendant, as well as photocopies of many pages of discovery (principally police reports), docket sheets, and

3

transcripts of the proceedings. Many of these photocopied pages had underlining and comments (presumably from the defendant) hand-written onto them. A proof of service indicated that the postconviction petition was placed in the Menard Correctional Center's mail system on June 24, 2022.

¶ 13    The docket sheets provide no information on how or when the court ruled on the *pro se* petition. However, the report of proceedings indicates that the court docketed the *pro se* petition for further consideration.

¶ 14    On September 21, 2022, three affidavits were filed by the circuit clerk. They appeared to be written by three potential witnesses for the defendant.

¶ 15    On November 2, 2022, the court appointed a private attorney to serve as postconviction counsel for the defendant. Subsequent to that appointment, the defendant's trial counsel, Janie Miller-Jones, ceased being the county public defender, and she became an assistant public defender in that office. A new attorney succeeded Miller-Jones as the county public defender. On January 11, 2023, the trial court vacated the appointment of the private attorney as postconviction counsel and appointed the public defender's office to represent the defendant in postconviction proceedings. On January 30, 2023, assistant public defender Audrey C. Thompson assumed responsibility for this case.

¶ 16    On February 5, 2023, the circuit clerk filed a *pro se* email from the defendant to the trial court. In the email, the defendant expressed deep misgivings about being represented by the public defender's office in postconviction proceedings when it was the county public defender (*i.e.*, Miller-Jones) who had represented him at trial, and he was claiming that she had been ineffective. He sought the appointment of an attorney outside the public defender's office.

4

¶ 17    The trial court granted attorney Thompson numerous extensions of time to file an amended postconviction petition on the defendant's behalf. On October 10, 2023, at a hearing without the defendant present, attorney Thompson represented to the court that the defendant had stated he wished to represent himself. The court scheduled a hearing for November 13, 2023.

¶ 18    On November 13, 2023, the trial court called a hearing on the defendant's request to represent himself in regard to the postconviction petition he filed *pro se* on June 30, 2022. The defendant was present with attorney Thompson. Thompson informed the court that on "multiple occasions," she and the defendant had discussed this case over the phone, by letter, and through a friend of the defendant. She had drafted an amended postconviction petition, but the defendant did not "approve" of it; he "did not like" the conclusions she had drawn or the way she had "formed the arguments." She stated that if she were to continue as the defendant's postconviction counsel, she could file the amended postconviction petition within the week. In response to a query from the court, Thompson indicated that so far as she was aware, she had no conflict of interest in representing the defendant.

¶ 19    The defendant told the court that he never had told Thompson he wanted to represent himself in this case. He stated that he felt sure that he was incapable of representing himself effectively, especially after his recent brain surgery had slowed his thinking. The defendant also stated that, at the same time, he was thoroughly dissatisfied with Thompson's postconviction representation, and with her not responding to his letters "in a timely manner" and her "rushing" him in telephone conversations. According to the defendant, counsel had failed to raise in her draft of an amended petition all of the claims that he had included in his *pro se* petition, stating that they were meritless, even though a judge had advanced his *pro se* petition to the second stage of proceedings and thus had "approved" all of those *pro se* claims. The defendant also was making a

5

postconviction claim that his counsel at trial, Miller-Jones of the public defender's office, had provided him with ineffective assistance, and therefore he should not be represented in postconviction proceedings by another attorney from that same office. The defendant asked the court to appoint counsel from outside the public defender's office, to ensure that there would not be a conflict.

¶ 20    After listening to the defendant's concerns, the court explained that the defendant's trial counsel, Miller-Jones, had been the county public defender at the time of his trial, but that she was no longer the county public defender; Miller-Jones was now an assistant public defender, with no control over Thompson. Therefore, said the court, Thompson had no conflict of interest in representing the defendant in postconviction proceedings, even when those proceedings included a claim that Miller-Jones was ineffective at trial. The judge next stated that when a judge advances a postconviction petition to the second stage of proceedings, he is not necessarily endorsing all the individual claims in that petition. The judge found that the defendant had given him no reason to think that attorney Thompson was providing him with anything less than competent and zealous representation. He urged the defendant to be "open-minded" about what Thompson was telling him, because Thompson was using her expertise to amend and shape his postconviction petition so as to maximize the chance that he would obtain postconviction relief. The court found that the defendant simply disagreed with Thompson's views on the merits of his *pro se* postconviction claims. The court took the defendant's request concerning counsel as a motion for the appointment of alternate counsel, and it denied the request. The court granted Thompson additional time to file an amended postconviction petition.

¶ 21    On January 2, 2024, the defendant filed a single-page *pro se* motion seeking the appointment of "conflict free" counsel. The stated reasons for the motion included, *inter alia*,

6

attorney Thompson's "[m]isrepresenting" to the court the amount of time that she had talked to the defendant, her failing to "review all information" from the defendant's two trials before starting work on the amended postconviction petition, and her "[d]isregarding true issues" in his *pro se* postconviction petition.

¶ 22     On January 11, 2024, the defendant filed, through attorney Thompson, an amended petition for postconviction relief. This amended petition is the subject of the instant appeal. The claims in the amended petition were that (1) trial counsel had provided the defendant with ineffective assistance (i) when she failed to file a motion to quash the defendant's arrest and to suppress the defendant's custodial statements and (ii) when she failed to call the victim's sister as a witness in support of the defendant's "partial alibi defense"; and (2) direct-appeal counsel had provided him with ineffective assistance in failing to raise those issues of trial counsel's ineffectiveness. In addition to those claims, attorney Thompson also set forth in the amended petition six "proposed claims" that the defendant "wishe[d]" to raise but that she was unable to raise due to "a professional inability to pursue claims believed to be meritless." Each of the six "proposed claims" was accompanied by Thompson's explanation as to why she considered the claim meritless.

¶ 23     Attached to the amended postconviction petition was the defendant's affidavit. In it, he swore, *inter alia*, that he had filed his original *pro se* petition late, but the delay was not due to his culpable negligence but rather to the prison lockdowns and quarantines associated with COVID-19.

¶ 24     Also attached to the amended petition were two certifications signed by attorney Thompson. The first certification was one of compliance with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). In it, counsel stated that she had (1) "consulted with [the defendant] by phone, mail, electronic means or in person to ascertain his contentions of deprivation of constitutional

rights"; (2) "examined the court file and the record of proceedings at the trial"; and (3) "made amendments to [the defendant's] *pro se* post-conviction pleading as necessary for adequate presentation of his contentions." The second certification detailed the dates that Thompson had consulted by telephone with the defendant (seven dates from late March 2023 to mid-October 2023); the dates she had sent written correspondence to the defendant (eight dates from early February 2023 to mid-January 2024); the dates she received written correspondence from the defendant (four dates from late February 2023 to mid-October 2023); and the date she spoke with the defendant in person (mid-November 2023). The second certification also included the dates that Thompson had reviewed the court file, discovery, and the transcripts of "every single hearing held in this case."

¶ 25      On February 12, 2024, the trial court called a hearing on the defendant's *pro se* motion for the appointment of "conflict free" counsel. The defendant stated that on May 10, 2023, he had "brain surgery." He was "outside the prison" from May 10, 2023, to July 17, 2023, and then in the prison infirmary for another 10 days. This experience negatively affected his "cognitive ability" and his memory. The defendant disputed the information contained in the certification that attorney Thompson had prepared and filed with the amended postconviction petition, *i.e.*, the affidavit in which Thompson detailed the dates of their telephone conversations, etc. He accused Thompson of lying to the court. He also accused her of "fail[ing] to investigate leads" he had provided in his affidavits. In response to the defendant's argument, attorney Thomspon stated that the public defender's "office policy" precluded the appointment of a different assistant public defender to represent the defendant.

¶ 26      The court found, based on attorney Thompson's affidavit concerning her communications with the defendant, that attorney Thompson "[had] spent more than the requisite amount of time"

8

to provide the defendant with competent postconviction representation. The court denied the defendant's *pro se* motion for the appointment of "conflict free" counsel. The court stated that it was not going to "appoint some other attorney from [the public defender's] office *** when it is abundantly clear that [Thompson] is competently representing you."

¶ 27    The defendant stated that he was unable to represent himself, but that he did not understand "why [Thompson] can say on the affidavit she talked to me when I was clearly in the hospital." Thompson replied that on May 16, 2023, she had a telephone call scheduled with the defendant; she "called the facility" on that date and "was told he was in the hospital." Thompson stated that she had erred in her affidavit when she stated that she spoke with the defendant on May 16, 2023; in truth, she merely attempted to speak with him on that date. Other than that one instance, Thompson stated, she stood by her affidavit.

¶ 28    On April 25, 2024, the State filed a motion to dismiss the amended postconviction petition. The State argued that the original *pro se* petition was filed late, and that the defendant had failed to show that the delay was not due to his culpable negligence. The State also stated that the amended petition did not make a substantial showing of a constitutional violation.

¶ 29    On July 24, 2024, the defendant, through attorney Thompson, filed a response to the State's motion to dismiss the amended postconviction petition. The defendant argued that he had alleged facts showing that the delay in filing his original *pro se* petition was due to COVID-19 and its attendant prison lockdowns and quarantines, all matters beyond his control. He also argued that in each of the claims presented in his amended postconviction petition, he had made a substantial showing of a constitutional violation.

¶ 30    On September 4, 2024, the trial court entered an order granting the State's motion to dismiss the defendant's amended postconviction petition. The court found that the original *pro se*

9

petition was untimely and that the defendant had failed to allege facts showing that the delay was not due to his culpable negligence. Furthermore, the court found that the claims raised in the amended postconviction petition regarding the alleged ineffectiveness of the defendant's trial counsel did not make a substantial showing of a constitutional violation. The defendant filed a notice of appeal from this dismissal order.

¶ 31                                    II. ANALYSIS

¶ 32    This appeal is from the trial court's order that dismissed, on the State's motion, the defendant's amended petition for postconviction relief. Appellate review is *de novo*. *People v. Dupree*, 2018 IL 122307, ¶ 29. That is, this court performs the same analysis that the trial court performed, giving no deference to that court's conclusions or reasoning. *In re N.H.*, 2016 IL App (1st) 152504, ¶ 50.

¶ 33    The Act provides a statutory method by which a defendant may challenge his conviction or sentence for substantial violations of federal or state constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2022); *People v. Edwards*, 2012 IL 111711, ¶ 21. A proceeding under the Act commences when a criminal defendant files a petition in the trial court in which the conviction took place. 725 ILCS 5/122-1(b) (West 2022). Under the procedural framework of the Act, there are three stages of postconviction proceedings. *People v. Cotto*, 2016 IL 119006, ¶ 26. At the first stage, the trial court determines whether the petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2022). If the petition is not dismissed at the first stage, it advances to the second stage, where the court may appoint counsel, who may then amend the petition as necessary, and the State may file either an answer to the petition or a motion to dismiss the petition. *Id.* §§ 122-4, 122-5. At this pleading stage, the court determines whether the allegations in the petition and any accompanying documentation make a "substantial showing of a constitutional

10

violation." *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). This "substantial showing" is a measure of the legal sufficiency of the petition. *People v. Domagala*, 2013 IL 113688, ¶ 34. If the petition fails to make a substantial showing, it will be dismissed, but if the petition makes a substantial showing, it will avoid dismissal. *Edwards*, 197 Ill. 2d at 246. If the petition is not dismissed, the defendant is entitled to a third-stage evidentiary hearing, after which the court decides whether to grant postconviction relief. 725 ILCS 5/122-6 (West 2022); *Domagala*, 2013 IL 113688, ¶ 34.

¶ 34    Under section 122-1(c) of the Act, a defendant who was not sentenced to death was required to file his postconviction petition no more than six months after the conclusion of proceedings in the United States Supreme Court, or, if no petition for a writ of *certiorari* was filed, no more than six months after the deadline for filing a *certiorari* petition. 725 ILCS 5/122-1(c) (West 2022). A late filing would be excused if the defendant alleged facts showing that the delay was not due to his culpable negligence. *Id.* This limitation did not apply when the postconviction petition set forth a claim of actual innocence. *Id.*

¶ 35    Before addressing the merits of this appeal, this court addresses the threshold question of whether the defendant's original *pro se* petition, filed with the trial court on June 30, 2022, was timely or untimely. The State, in its motion to dismiss the amended petition, argued that the *pro se* petition was filed late, and that the defendant had failed to allege facts showing that the delay was not due to his own culpable negligence. In response to the State's motion to dismiss, the defendant, through attorney Thompson, conceded that the original petition was filed late, but argued that the delay was not due to the defendant's culpable negligence. The trial court, in its order dismissing the defendant's amended postconviction petition, found that the defendant's *pro se* postconviction petition had been filed late, and that the defendant had failed to allege facts showing that the delay was not due to his culpable negligence. In other words, the court found that the postconviction

11

petition was untimely. The concession of a late filing, and the court's finding that the petition was untimely, were erroneous.

¶ 36    In the instant defendant's direct appeal, the judgment of conviction was affirmed. See *Hairston*, 2021 IL App (4th) 190326-U. The defendant then filed a PLA to the Illinois Supreme Court, which that court denied on September 29, 2021. See *Hairston*, No. 127150 (Sept. 29, 2021). The defendant did not file a petition for a writ of *certiorari* in the United States Supreme Court, but under United States Supreme Court Rule 13, he had 90 days from the date the PLA was denied in which to file a petition for *certiorari*. U.S. S. Ct. R. 13. Ninety days after September 29, 2021, was Tuesday, December 28, 2021; that was the deadline for the defendant to file a petition for *certiorari*. (On March 19, 2020, the United States Supreme Court entered an administrative order extending the deadline for filing a petition for writ of *certiorari* to 150 days, due to the COVID-19 pandemic. However, this order was rescinded on July 19, 2021, while the defendant's PLA was pending before our supreme court. See https://www.supremecourt.gov/announcements/covid-19.aspx.) Six months after December 28, 2021, was Tuesday, June 28, 2022.

¶ 37    Thus, the defendant needed to file his *pro se* postconviction petition by June 28, 2022. Because the defendant placed his *pro se* petition in the prison mail system on June 24, 2022, the petition was timely. See *People v. Johnson*, 232 Ill. App. 3d 882, 884 (1992) (when a defendant is imprisoned, a postconviction petition is considered "filed" on the day it is placed in the prison mail system). The postconviction petition could not properly be dismissed on untimeliness grounds. This court now addresses the merits of this appeal.

¶ 38    In the defendant's amended postconviction petition, he claimed that (1) trial counsel had provided ineffective assistance (i) by failing to file a motion to quash the defendant's arrest and to suppress the defendant's custodial statements and (ii) by failing to call the victim's sister as a

12

witness in support of the defendant's "partial alibi defense"; and (2) direct-appeal counsel had provided ineffective assistance by failing to raise the preceding issues concerning trial counsel's ineffectiveness. The trial court found that the amended petition's claims lacked merit. OSAD, in the legal memorandum that accompanies its *Finley* motion, finds that these claims failed to make a substantial showing of a constitutional violation.

¶ 39 Criminal defendants have a constitutional right to the effective assistance of counsel at trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984). A claim of ineffective assistance of counsel is judged under the two-prong test set forth in *Strickland*. To prevail under the *Strickland* analysis, a defendant must show both that (1) counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687. To satisfy the deficient-performance prong under *Strickland*, defendant must show that counsel's performance was so inadequate "that counsel was not functioning as the 'counsel' guaranteed by the sixth amendment." *People v. Evans*, 186 Ill. 2d 83, 93 (1999). Also, courts must indulge a strong presumption that counsel's conduct was sound trial strategy. *Strickland*, 466 U.S. at 689. If a defendant can establish deficient performance, the second prong requires defendant to show that he was prejudiced as a result. *People v. Dupree*, 2018 IL 122307, ¶ 44. To satisfy the prejudice prong, defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The *Strickland* standard applies to claims of ineffective assistance by trial or direct-appeal counsel. *People v. Lear*, 175 Ill. 2d 262, 269 (1997). A reviewing court may decide the ineffective assistance claim by

13

finding that the defendant was not prejudiced by his counsel's performance, without even determining whether counsel's performance was deficient. *Id.*

¶ 40 The first substantive issue is whether the defendant made a substantial showing that his trial counsel provided constitutionally ineffective assistance when she failed to file a motion to quash the defendant's arrest and to suppress the defendant's post-arrest statements to police. The amended postconviction petition, like the original *pro se* petition, called attention to the warrant of arrest for the defendant, which was issued on August 2, 2018. This warrant provided the defendant's correct name, his last known address, his date of birth, race, sex, height, weight, hair color, and eye color. All of this information pertained to the defendant. The arrest warrant also stated that the defendant had committed predatory criminal sexual assault of a child between February 2017 and August 15, 2017, which matched the allegations in the August 2018 information. However, in that section of the warrant that commanded an arrest, the defendant's name did not appear as the person to be arrested; instead, the name "Cory D. Jackson" appeared. According to the defendant's amended postconviction petition, this error rendered the arrest warrant "facially defective."

¶ 41 After the defendant was arrested on the warrant, police informed him that his arrest was for "sexual assault." He was given no information about the specific allegation or the specific victim. He was transported to Champaign police headquarters. As he stood handcuffed in a hallway at police headquarters, the defendant made spontaneous statements to the police, which were recorded on audio and video. A 28-second excerpt of this recording was admitted into evidence and played for the jury. In that excerpt, the defendant appeared to deny any wrongdoing. He asked the police, "Where'd this shit come from? Somebody's momma? Somebody's kid? What, come on, stop it." In his amended postconviction petition, the defendant alleged that if this 28-second

14

excerpt had not been admitted into evidence and played for the jury, there was a reasonable probability that the defendant would not have been found guilty.

¶ 42    Contrary to the defendant's claim, the arrest warrant was not facially defective. As OSAD states in its *Finley* memorandum, the warrant was valid. Section 107-9(d) of the Code of Criminal Procedure of 1963 states that a warrant of arrest shall (1) be in writing; (2) specify the name, sex, and birth date of the person to be arrested; (3) set forth the nature of the offense; (4) state the date when issued and the municipality or county where issued; (5) be signed by the judge of the court; (6) command that the person against whom the complaint was made be arrested and brought before the court issuing the warrant or the nearest or most accessible court in the same county; (7) specify the conditions of pretrial release, if any; and (8) specify and geographical limitation on the execution of the warrant, if any. 725 ILCS 5/107-9(d) (West 2018). Furthermore, "[a] warrant of arrest shall not be quashed or abated nor shall any person in custody for an offense be discharged from such custody because of technical irregularities not affecting the substantial rights of the accused." *Id.* § 107-10.

¶ 43    In this case, the warrant of arrest completely conformed to section 107-9(d), except as to subsection 107-9(d)(6): the warrant commanded the arrest of "Cory D. Jackson," not the defendant. However, the correct name, sex, birth date, etc., of the defendant were provided in the upper half of the warrant, and the warrant referenced the information that had charged the defendant with predatory criminal sexual assault of a child "between February 2017 and August 15, 2017." Meanwhile, the information, filed the same day as the arrest warrant, charged the defendant with committing that same crime in that same time frame. As OSAD comments in its *Finley* memorandum, "There is no question that [the defendant] is the person identified in the information and is the person that the warrant referenced at the top of the page and against whom

15

the warrant was meant to be served." Naming "Cory D. Jackson" in one part of the arrest warrant, instead of the defendant, was a technical irregularity that could not serve as a basis for quashing the arrest warrant.

¶ 44    Also, the defendant's post-arrest statements to police were not of such consequence that their suppression might have resulted in something other than a guilty verdict. The State's trial evidence consisted primarily of the testimony of the child-victim in the case, T.H., who was 11 years old at the time of trial, and a recording of an interview with T.H. conducted on July 26, 2018, by a forensic interviewer at a children's advocacy center in Champaign. During her trial testimony, as in the recorded interview, T.H. described the first time the defendant had sexually assaulted her. According to T.H., in 2017, the defendant was the boyfriend of T.H.'s mother, and he lived in T.H.'s mother's house, along with T.H. and T.H.'s younger sister. One night, when T.H. was nine years old, the defendant entered her bedroom, waking her. The defendant held a kitchen knife to T.H.'s throat and told her not to tell anyone about this incident. Then, he inserted his finger into her vagina. This behavior was repeated, although without the knife, on approximately 10 occasions thereafter. Testifying on his own behalf, the defendant stated that he never resided at T.H.'s mother's house. However, he acknowledged that from February 2017 through July of 2017, he "would visit" T.H.'s mother twice per month for sex, sometimes spending the night with her.

¶ 45    This frequency of visits to T.H.'s mother's house provided the defendant with more than sufficient opportunity to commit the one count of predatory criminal sexual assault of a child of which he was convicted. As OSAD states in its *Finley* memorandum, there is "no possibility" that the defendant's trial would have ended differently if the jury had not been exposed to the 28-second recording of the defendant's post-arrest statements to police.

16

¶ 46    In short, the defendant, in his amended postconviction petition, failed to make a substantial showing that trial counsel provided ineffective assistance by failing to file a motion to quash the defendant's arrest. He likewise failed to make a substantial showing that trial counsel was ineffective for not filing a motion to suppress the defendant's custodial statements.

¶ 47    The next substantive issue is whether the defendant made a substantial showing that his trial counsel had provided ineffective assistance by failing to call T.H.'s sister as a witness in support of his "partial alibi defense," *i.e.*, in support of his statements that he never resided in the same house as T.H., T.H.'s sister, and the sisters' mother. T.H.'s sister, who was three years younger than T.H., did not testify at the defendant's trial. According to the defendant's amended postconviction petition, the sister was interviewed at the same children's advocacy center where T.H. was interviewed, and during that interview, the sister stated that at the time the defendant allegedly abused T.H., "no one lived in the house" except her, her sister T.H., and their mother. The amended postconviction petition was not accompanied by an affidavit from T.H.'s sister or from her interviewer.

¶ 48    Generally, decisions concerning which witnesses to call are viewed as matters of trial strategy, which are generally immune from claims of ineffective assistance. *People v. Munson*, 206 Ill. 2d 104, 139-40 (2002). More importantly, there is no reasonable probability that the result of the defendant's trial would have been different if trial counsel had called T.H.'s younger sister as a witness and T.H.'s sister had testified that nobody else "lived in the house" except for her, T.H., and their mother. Relying on an eight-year-old witness to testify about living arrangements two years earlier seems like a desperate move, and a pointless move, at that. The defendant himself testified that he visited T.H.'s mother twice per month from February through July of 2017, sometimes spending the night. As previously stated, his visits to the house, even without actually

17

residing in the house, afforded the defendant ample opportunity to commit the one count of predatory criminal sexual assault of a child of which he was convicted. There was no substantial showing that trial counsel was ineffective for not calling T.H.'s younger sister to testify at trial.

¶ 49 The defendant also claimed in his amended postconviction petition that direct-appeal counsel provided ineffective assistance in failing to raise the above issues of trial counsel's ineffectiveness. The *Strickland* standard applies to claims of ineffective assistance of direct-appeal counsel, just as it applies to such claims against trial counsel. *Lear*, 175 Ill. 2d at 269. Counsel has no obligation to argue every conceivable issue on direct appeal, even if the issue was available at that time. *People v. Tenner*, 175 Ill. 2d 372, 387 (1997). If the underlying issue is not meritorious, the defendant suffers no prejudice if direct-appeal counsel chooses not to raise it, and therefore counsel cannot be constitutionally ineffective. *People v. Rogers*, 197 Ill. 2d 216, 223 (2001). The defendant's amended postconviction petition's claims of ineffective assistance by trial counsel were without merit, and therefore direct-appeal counsel cannot be found constitutionally ineffective for not raising them.

¶ 50 In his amended petition for postconviction relief, the defendant failed to make a substantial showing that he was deprived of his constitutional right to the effective assistance of counsel, whether at trial or on direct appeal. Due to his failure, dismissal of the amended petition was appropriate. This court affirms the dismissal.

¶ 51 In addition to those claims raised in the amended postconviction petition, the defendant also wanted to raise all of the other postconviction claims that were included in his original *pro se* petition. However, his postconviction counsel, attorney Thompson, concluded that she could not raise those other claims in the amended petition because they were meritless. See Ill. S. Ct. R. 137(a) (eff. Jan. 1, 2018) (when an attorney signs a pleading, she certifies that it is "well grounded"

18

in fact and in law). At the same time that Thompson filed the amended petition on the defendant's behalf, she also filed a certificate of compliance with Rule 651(c). See Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Her certification closely tracked the language of Rule 651(c).

¶ 52 The purpose of Rule 651(c) is to ensure that postconviction counsel shapes a defendant's postconviction claims into proper legal form and presents them to the court. *People v. Perkins*, 229 Ill. 2d 34, 43-44 (2007). By filing a certification that substantially complied with Rule 651(c), Thompson raised a rebuttable presumption that she had provided the defendant with the required "reasonable" level of assistance. See *People v. Addison*, 2023 IL 127119, ¶¶ 19, 21.

¶ 53 The trial court found—on November 13, 2023, and on February 12, 2024—that Thompson was altogether competent and zealous in her representation of the defendant. Having examined the record on appeal, and the defendant's written response to the *Finley* motion, this court does not see anything to contradict the court's finding, or to overcome the presumption that Thompson's performance was reasonable. Postconviction counsel cannot be found unreasonable for not amending claims that had no merit to begin with. *People v. Greer*, 212 Ill. 2d 192, 205 (2004).

¶ 54 There also was no conflict of interest between attorney Thompson and the defendant. Although the defendant's trial counsel, Miller-Jones, was the county public defender at the time of trial, she ceased being the public defender after the trial, and she became an assistant public defender. During the instant postconviction proceedings, Miller-Jones and Thompson were both assistant public defenders; neither was in a superior or subordinate position to the other. Accordingly, there was no *per se* conflict of interest between Thompson and the defendant. See *People v. Banks*, 121 Ill. 2d 36, 41 (1987) ("While a conflict of interest among any member of a private law firm will disqualify the entire firm [citation], the disqualification of an assistant public defender will not necessarily disqualify all members of that office [citation]."). Furthermore, there

19

were no facts peculiar to this case that created an actual conflict between attorney Thompson and the defendant. See *People v. Miller*, 79 Ill. 2d 454, 462 (1980). Allegations that Thompson's loyalties were divided between the defendant and Miller-Jones (or her office) were wholly speculative.

¶ 55   Finally, in his written response to OSAD's *Finley* motion, the defendant appears to present still-more postconviction claims, beyond those raised in the trial court by him or his postconviction counsel. He states that trial counsel was ineffective for failing to request that the jury be polled after returning its verdicts; for failing to present "mitigating evidence at either trial or in the motion for a new trial"; for failing to arrange to have him transported from prison to court for the hearing on a motion to reconsider sentence; and for failing to object to the prosecutor's "use of perjured testimony" and "misconduct." Little to no specifics were offered. Further, the defendant states in his written response that the judge at his trial "should [have] been recused from [the instant] case" because that same judge had entered a directed verdict in the defendant's favor in "a very serious case," and it was due to that earlier directed verdict that the judge "improperly punished" him for the instant offense by imposing a disproportionate sentence.

¶ 56   Regardless of what else can be said about these new claims, it is clear that they have been forfeited in this appeal due to their not being mentioned in the postconviction proceedings below. See *People v. Jones*, 213 Ill. 2d 498, 508 (2004) (where a defendant failed to raise a claim in his postconviction petition, the claim is forfeited on appeal, leaving the defendant with the sole recourse of filing a motion for leave to file a successive petition).

¶ 57                                     III. CONCLUSION

¶ 58   Where the defendant failed to make a substantial showing that he was deprived of his constitutional right to the effective assistance of trial or direct-appeal counsel, his amended

20

postconviction petition was properly dismissed at the second stage. Therefore, OSAD is granted leave to withdraw as counsel, and the trial court's order dismissing the defendant's amended postconviction petition is affirmed.

¶ 59    Motion granted; judgment affirmed.